IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

RICHARD PHILIPPE

CRIM. NO. 19CR10328-FDS

**DEFENDANT'S RESPONSE RE DETENTION**

Defendant Richard Philippe hereby responds to the government's Response to Order Regarding 18 U.S.C. § 3142.

The Supreme Court has cautioned that "in our society liberty is the norm, and detention prior to trial … is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Court may detain Mr. Philippe only if it determines: (1) by clear and convincing evidence, that no condition or combination of conditions set forth under 18 U.S.C. § 3142(b) or (c) can reasonably assure the safety of the community, or (2) by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure his appearance as required. 18 U.S.C. § 3142(e) and (f); *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991). Under both prongs, the burden of persuasion rests upon the government. *United States v. DiGiacomo*, 746 F. Supp. 1176, 1181 (D. Mass. 1990); *United States v. Chimurenga*, 760 F.2d 400, 403 (2nd Cir. 1985). Detention is not warranted under either rationale.

**Dangerousness**

It is well-settled in this Circuit that a violation of 18 U.S.C. § 922(g), felon in possession, is not a crime of violence for purposes of the Bail Reform Act. *See e.g., United States v. Gray*, 529 F. Supp. 2d 177, 180 n. 3; *United States v. Silva*, 133 F. Supp. 2d 104, 109 (D. Mass. 2001);

*accord United States v. Singleton*, 182 F.3d 7, (D.C. Cir. 1999); *United States v. Bowers*, 432 F.3d 518 (3rd Cir. 2005). However, pursuant to 18 U.S.C. § 3142(f)(1)(E), detention for dangerousness may occur in a case involving any felony "that involves the possession or use of a firearm or destructive device (as those terms are defined in § 921), or any other dangerous weapon…" Without citing any authority, the government asserts that ammunition is a dangerous weapon. Absent a firearm, ammunition is not a dangerous weapon. Nor is it a firearm. Nor is it a destructive device. Nor can the government rely upon firearms that might be considered as relevant conduct at sentencing for the purpose of satisfying 18 U.S.C. § 3142(f)(1)(E). Consequently, the crime of felon in possession of ammunition cannot be the basis for detention under § 3142.

18 U.S.C. § 921(a)(3) defines "firearm" as: "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." Loose rounds of ammunition can't fire themselves. They can't be converted to propel a projectile. They are the projectile.

18 U.S.C. § 921(a)(4) defines "destructive device" as follows:

> **(4)** The term "destructive device" means—
> **(A)** any explosive, incendiary, or poison gas—
> **(i)** bomb,
> **(ii)** grenade,
> **(iii)** rocket having a propellant charge of more than four ounces,
> **(iv)** missile having an explosive or incendiary charge of more than one-quarter ounce,
> **(v)** mine, or
> **(vi)** device similar to any of the devices described in the preceding clauses;
> **(B)** any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other

2

propellant, and which has any barrel with a bore of more than one-half inch in diameter; and
**(C)** any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordinance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 7684(2), 7685, or 7686 of title 10 [10 USCS § 7684(2), 7685, or 7686]; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.

It is utterly nonsensical to suggest that Congress intended to include ammunition in this definition, but somehow failed to use the word; particularly nonsensical given that later in the same section, at ¶ (a)(17), a definition of "ammunition" is provided: "… ammunition means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm." Congress specified all sorts of specific items as constituting destructive devices: poison gas, bombs, grenades and mines. Given that bullets pose a somewhat more common threat than landmines, it seems likely that Congress would have mentioned them if their intention was to include them in the definition of destructive devices.

That leaves the question of whether ammunition is a dangerous weapon. The question was addressed by the Sixth Circuit a few months ago in *United States v. Penny*, 2019 U.S. App. LEXIS 17389, 2019 WL 2448253 (6th Cir. June 11, 2019). A post-arrest search of the defendant found nineteen rounds of ammunition. He pled guilty to drug trafficking. The district court denied him the benefit of the safety valve, which disqualifies a defendant in possession of a firearm "or other dangerous weapon" in connection with the offense. USSG § 5C1.2(a)(2). The district court concluded that ammunition fit within the definition of "dangerous weapon" provided at USSG § 1B1:1: "… an instrument capable of inflicting death or serious bodily

3

injury…" This definition is virtually identical to the definition at 18 U.S.C. § 930, relied upon by the government, defining "dangerous weapon" to include any item used for or readily capable of causing death or serious bodily injury. The Sixth Circuit reversed, finding that without a firearm, ammunition fails the definition of a dangerous weapon: "Plainly, ammunition is incapable of inflicting death or serious injury without a firearm." *Id*. at *7. The Court concluded that the district court's denial of the safety valve amounted to an abuse of discretion requiring resentencing. *Id*.

Lastly, the government cannot satisfy 18 U.S.C. § 3142(f)(1)(E) by pointing to evidence that falls outside the offense charged in the indictment. In order for the government to be entitled to a hearing on dangerousness under § 3142(f)(1)(E), the case must involve "any felony" that "involves the possession or use of a firearm or destructive device …, or any other dangerous weapon…" If this requirement is satisfied, then the court may consider evidence specific to the defendant in assessing whether there are conditions that warrant release. But the determination of whether § 3142(f)(1)(E) is satisfied to begin with, entitling the government to a hearing, must be based on the actual crime charged.

In *United States v. Bowers*, 432 F. 3d 518 (3rd Cir. 2005), the Court considered whether a detention hearing was required pursuant to § 3156(a)(4) where the defendant was charged as a felon in possession of a firearm. The Court held that this determination must be based on a categorical approach, not upon the facts specific to the defendant. *Id*. at 521. The Court concluded that the crime of felon in possession is not categorically a crime of violence. *Id*. Consequently, the facts surrounding the defendant's indictment were not to be considered. In the instant case, the government's urging the Court to consider evidence of gun possession is even more of an improper stretch. Philippe is not charged with possession of a firearm and there is no

4

mention of a firearm in the indictment.  Categorically, the crime of being a felon in possession of ammunition does not satisfy § 3142(f)(1)(E) because ammunition is not a dangerous weapon, a firearm, or a destructive device.  And that must be the end of the dangerousness inquiry.

If the Court disagrees with this argument and concludes that it is appropriate to consider facts that go beyond the indictment, a few points warrant mention.  There is no evidence of Philippe being in possession of a firearm at the time his warehouse was searched.  There is no evidence of his having any source for obtaining a firearm anywhere outside of Georgia.  His prior Rhode Island conviction for not having a gun permit dates back to 2004, too old to count for criminal history under the Guidelines.

In conclusion, detention for dangerousness pursuant to § 3142(f)(1)(E) is not only unwarranted, it is impermissible.

**Risk of Flight**

Mr. Philippe came to the U.S. from Haiti in 1993, at age 14.  He married Myrlande Philippe in 2008.  They have two children, 11 and 13, born and raised here.

Mr. Philippe has a green card.  However, his mother believes that she became a U.S. citizen when Mr. Philippe was 17 years-old, which would make him a citizen.

His family's living situation is now stable.

Probation's assertion that ties to Haiti make Mr. Philippe a flight risk is very weak.  His wife and children are here.  His mother and two sisters are here.  He has three half-siblings in Haiti.  Hardly a reason to expect him to abandon his family, or flee with them, to one of the most impoverished countries in world, the poorest in the Western hemisphere.  https://www.focus-economics.com/blog/the-poorest-countries-in-the-world  The country is plagued by political instability, rioting and civil unrest, cholera, natural disasters, shortages of fuel, crime and

kidnappings. *See* https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Haiti.html

Mr. Philippe's criminal record is minimal. He's at Criminal History Category I.

The offense charged is not a basis to conclude that he is a risk of flight. If no guns are counted as relevant conduct, his guideline range on a plea will be 10-16 months, Offense Level 12, Criminal History Category I. If 3-7 guns are counted, he'll be at a range of 12-18 months. If 8-24 guns are counted, the range goes up by 6 months. He was arrested over two months ago. There is no reason to believe that he is going to abandon his family, or flee with them to Haiti, in order to avoid incarceration.

Probation asserted that Mr. Philippe's substance abuse history creates a risk of flight. The only substance that Mr. Philippe acknowledged using regularly was marijuana. He could be drug tested as a condition of release. If marijuana use was a legitimate reason to detain defendants there'd need to be room to house thousands of additional inmates.

Probation has identified a number of defaults from prior cases. Mr. Philippe is not able to shed light on most of these entries. He does not recall defaulting in the Rhode Island cases. The lawyer who represented him in Rhode Island does not remember the cases. However, the court records suggest that the judges learned of something that explained or excused whatever happened.

There is a 2003 Rhode Island case in which the lead charge was carrying a pistol without a license. The court record indicates several defaults: a period of three days, 5/25/04-5/28/04; a period of three months, 7/20/05-10/28/05; and a default on a probation matter of six months, 3/1/12-9/13/12. Mr. Philippe was never held, and there is no indication of any punitive action by the court in response to these supposed defaults.

There is a 2012 Rhode Island case for marijuana possession. This was the cause of the probation violation proceeding in the 2003 case. The record indicates a default from 4/30/12-9/13/12. Again, no punitive action was taken and Mr. Philippe was released on personal recognizance. The record also indicates that a standard warrant assessment was waived. These actions are not consistent with the judge thinking that Mr. Philippe had deliberately defaulted.

There is a 2006 Brockton District Court case in which the record shows a default of over two years in an OUI case. The default was entered on 10/12/06, the same date as the scheduled initial appearance for arraignment. His lawyer, Tina Green, advised counsel that Mr. Philippe was defaulted when he failed to appear at the initial appearance. He stated that he had not received a summons. The case involved a one car accident. Mr. Philippe was treated at a hospital and was not arrested. His license was suspended as a result of the default. This led to an arrest for operating after suspension in 2008, when he first appeared on the OUI case and the default was removed. Mr. Philippe was not held. This doesn't make much sense if the judge thought he'd actually received the summons and intentionally been on default for two years.

Whatever happened, these defaults should not preclude release on conditions. Ignoring court appearances would not be tolerated by this Court. If Mr. Philippe ever failed to appear, an arrest warrant would not merely be issued, it would be acted upon. Consequently, the real question raised by the defaults is whether they suggest that Mr. Philippe would not only fail to appear, but would attempt to flee. For the reasons already reviewed, this is not a serious risk. To whatever extent the Court is concerned, electronic monitoring would be a suitable condition.

This is not a complicated case. Mr. Philippe has conceded that the evidence of possession of ammunition is very strong. The case is likely to be resolved relatively quickly with a relatively short term of incarceration. Release would enable Mr. Philippe to put his affairs

in order and allow him to deal with the substantial amount of merchandise in his business warehouse. It is simply not a realistic fear, given what Mr. Philippe is facing, that he'd abandon his family or try to flee with them.

        Richard Philippe

        /s/ *Keith Halpern*
        Keith Halpern
        BBO # 545282
        572 Washington Street, Suite 19
        Wellesley, MA 02482
        (617) 722-9952

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 17, 2019.

        /s/ *Keith Halpern*