STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
PROVIDENCE, SC.                    SUPERIOR COURT


STATE OF RHODE ISLAND

V.                              WC-2003-0445A

RICHARD PHILIPPE


HEARD BEFORE THE HONORABLE ASSOCIATE
JUSTICE EDWIN J. GALE
ON JULY 30, 2004


**APPEARANCES:**

FOR THE STATE:        Roger Demers, Special Assistant
                      Attorney General

FOR THE DEFENDANT:    Seth Perlmutter, Esquire


GERALDINE M. MEENAN, RPR
COURT REPORTER - SUPERIOR COURT

# C E R T I F I C A T I O N

I, Geraldine M. Meenan, RPR, hereby certify that the proceeding pages, 1 through 13, are a true and accurate transcript, transcribed to the best of my ability, of the stenographic notes of Lori Doyle, taken on July 30, 2004.

Geraldine M. Meenan, RPR
Court Reporter

**JULY 30, 2004**

1

2    THE CLERK:  Mr. Philippe, come forward, please.

3    MR. PERLMUTTER:  Counsel table or at the desk?

4    THE COURT:  If you feel better closer, we will have

5    better eye contact.  It doesn't make any difference to

6    me.

7    THE CLERK:  State your name, date of birth, and

8    address.

9    THE DEFENDANT:  Richard Philippe, ███ 79,

10   995 Eastern Park, New York, Apartment 4N.

11   THE CLERK:  W2-03-0445A for sentencing.

12   THE COURT:  Good morning, Mr. Philippe.

13   Counsel, would you please identify yourselves for

14   the record.

15   MR. PERLMUTTER:  Seth Adam Perlmutter, Bar

16   Number 1735, for the defendant.

17   MR. DEMERS:  Roger Demers for the State.

18   THE COURT:  I received two matters in this case,

19   first, a revised or updated presentence report prepared

20   by Gloria Lablow (phonetic).  I want to make sure that

21   both the defendant has had an adequate opportunity to

22   review that report, and that the State has likewise

23   received it.

24   MR. PERLMUTTER:  I have, Your Honor.

25   THE COURT:  Has your client had an adequate

1  opportunity to review it?

2        MR. PERLMUTTER:  Yes.

3        THE COURT:  Mr. Demers?

4        MR. DEMERS:  I'm standing in for Ms. Veroni on this

5  case.  I note that she has submitted a memo to the Court

6  which I understand indicates that she did review the

7  presentence report.

8        THE COURT:  I likewise received a memorandum just

9  referred to from the State relative to their position

10  concerning this capped plea, and I'm assuming, likewise,

11  that -- I can see Mr. Perlmutter going through that at

12  this point.

13        Let me ask you, Mr. Perlmutter, is there anything

14  you want to comment on with respect to somewhat of a

15  boilerplate prosecutor's memorandum?  Have you had an

16  opportunity to review that?

17        MR. PERLMUTTER:  Yes, I have had an opportunity to

18  review it, Judge.  I just would like to -- I don't want

19  to make this very long, but I do want to reiterate to the

20  Court, when this case first came to Washington County --

21  it reminds me of the old commercial about tuberculosis --

22  looks can be deceiving.  Somebody can be very well and

23  something can be remiss underneath.

24        When we first got our case on in our office, I

25  believe the Court thought this looked like an

1   assassination case we were about to take. I presented to

2   the Court his transcript from school this morning, he's

3   been out of school, but I think the Court can see, until

4   this gets resolved -- but I want to point out,

5   Mr. Philippe arrived in the United States at age 13,

6   coming from a very, very difficult circumstance in Haiti.

7   Haiti is a country today that still has citizens in the

8   United States from Haiti, still have temporary protection

9   status because of the unrest in Haiti. Just in the

10  recent weeks, Haiti has been in terrible condition.

11  There is much violence there. And by reason of this

12  plea, Mr. Philippe is aware that he may, even though he

13  has a green card at this point in time, he may, in fact,

14  be deported.

15      He has told me a number of times that he was in

16  possession of this weapon. There's no doubt he was. It

17  was not, in his view, an assassination. He was trying to

18  do the right thing, bring it from New York to turn it in

19  here. He made a miscalculation.

20      He's been with the same woman since he's been 13

21  years old. They are not married. They intend to get

22  married. They have been saving their money all their

23  lives to get married in the United States.

24      He's been the support of his mother. He's taken

25  himself up by the bootstraps, living in a very difficult

1  environment in New York. His mother is working very,

2  very hard to get him into school, keep him in school.

3  You can see the respect that he has for his family. His

4  school grades are all -- I think he's got three 100s,

5  three 90s, and one 85 are on that transcript. He is a

6  very hardworking young man trying to get forward in the

7  21st century.

8       This is a glitch. He has no previous record.

9  Living in New York, he could have had ample opportunity

10  to get himself in trouble since his 13th birthday. He

11  has not. He pled, and did not cost the system the time

12  to go to trial. He understands that he's done something

13  wrong.

14       I would ask the Court to give him credit for time

15  served. He's already served 144 days in prison while he

16  was awaiting the disposition. He missed the last Court

17  date when the presentence report was supposed to be here.

18  It was on for a Monday and Friday. Friday --

19       THE COURT: I think there was some confusion.

20       MR. PERLMUTTER: But what I mean to point out by

21  that, he is true to his word that he will be here. He

22  goes back to New York to take care of his mother and

23  comes right back to Rhode Island. I'd ask the Court to

24  depart from the plea. I'd ask the Court to impose a

25  sentence of 364 days. Obviously the Court knows I have a

1   reason to do that because it will assist him in staying

2   in this country.  By no means it gives him any pass to

3   stay in this country.  It would give him the argument

4   that, I'm entitled to a waiver, entitled to show you that

5   I have been of good behavior most of the time that I've

6   been here.  There is a criminal conviction that I have,

7   but I can explain that conviction.

8       And it would give him the opportunity to present to

9   an immigration judge evidence of his good character,

10  evidence of what he has done, evidence of the hardship to

11  his family, evidence of what the hardship is in his

12  country.  And I would ask the Court to impose the 364-day

13  sentence and impose 144 days of that, suspending 220 days

14  of that sentence so that Mr. Philippe would have a

15  fighting chance to stay in this country and be a

16  productive citizen.  He would like to be a citizen of the

17  United States.  I hope he has not forfeited that right by

18  some stupidity.

19      I would like to point out one last thing.  Even when

20  he was stopped, he didn't act like an assassin or

21  criminal.  He tried to -- at the point of his stop, he

22  volunteered to the police the information that the gun

23  was in the vehicle.  He volunteered to the police that

24  there was a marijuana cigarette in his ashtray.  They

25  weren't going to search him.  They stopped him for a

traffic violation. He gave up all the information. It certainly does not seem to me -- if he is an organized criminal, he certainly is a very bad one. If he's not an organized criminal, I think it's his pure heart and empty head that made him do something very, very stupid, especially given all the time he's been in this country and all the efforts he's made to better himself and his family. I'd like to see Mr. Philippe to get one shot at the apple. He hasn't had a bite yet.

For those reasons I would respectfully ask the Court for the disposition that I requested.

THE COURT: I wanted to indicate that I received a transcript issued June 25th, 2004 concerning training received by the defendant, apparently -- I need the file, Madam Clerk, please.

THE CLERK: Yes (handing document to the Court).

THE COURT: Mr. Demers, as I understand it, you are resting on the memo that was filed by your colleague?

MR. DEMERS: That's correct, Your Honor.

THE COURT: It sounds as though neither side has found any substantial or erroneous material of a presentence report to bring to my attention?

MR. DEMERS: That's correct.

MR. PERLMUTTER: That's correct.

THE COURT: Mr. Philippe, in a moment I'm going to

give you an opportunity to say anything you wish. I find this case very troubling. I obviously can't get to know you terribly well. I've received some information about you and what you are doing in this country. I might say that I was very unimpressed with your statement to Ms. Ladlow because you identified the source of the weapon as a friend, but we don't know who that friend is, what his business is, why he had what is an assassination weapon.

In my mind, and I really don't understand what it was that you thought you were going to do transporting, I might add, illegally, a firearm across state lines from New York into the state of Rhode Island. I just have no idea what you thought you were going to do. Your statement, which you are not required to give, of course, the statement to the probation officer, really is not of assistance.

Mr. Philippe, I do want you to respond to this question. You may want to talk with your attorney before you do that. I want to again advise you, because you do appear to be an alien, that is, not a U.S. citizen, that a sentence imposed as a result of your nolo contendere plea may result in deportation, exclusion of admission to the United States, and denial of naturalization pursuant to the laws of the United States. I have no control over

that. That is solely a matter within the province of the Federal authorities. But I do want you to fully appreciate that my acceptance of your nolo contendere plea and my sentencing may result in some or all of those sanctions. Do you fully appreciate that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you realize you might be deported?

THE DEFENDANT: Yes, sir.

THE COURT: Do you realize, even if you are not deported, they may never allow you to become a U.S. citizen?

THE DEFENDANT: I realize that, sir.

THE COURT: Do you likewise realize that even if you should, for example, be deported or voluntarily leave the United States, Federal officials may not let you back in to the United States? Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Do you still wish to plead nolo contendere to this charge?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything you would like to tell the Court relative to your case or yourself? You are not required to say anything, but you have an absolute right to say anything you want. If you wanted to call witnesses at this point and talk about -- to talk about

1  you, I would allow you to do that.

2  THE DEFENDANT: I don't have anything in mind right

3  now.

4  THE COURT: Do you want to say anything, sir?

5  THE DEFENDANT: Not at this time, no.

6  MR. PERLMUTTER: May I have a moment?

7  THE COURT: Certainly.

8  (BRIEF PAUSE)

9  THE COURT: Mr. Perlmutter, does your client wish to

10  say anything?

11  MR. PERLMUTTER: Yes, he does.

12  THE COURT: Keep your voice up.

13  THE DEFENDANT: I was advised by Mr. Perlmutter to

14  actually tell about my friend, the one I got it from. We

15  used to go to school together back in junior high school.

16  He had found it from a friend. They said -- they gave it

17  to him for free. That was a long time, and it was inside

18  of a brick somewhere. He told me he still got it, so he

19  went and checked. So when he give it to me in a plastic

20  bag, I never even really paid attention to it. I know I

21  already spoke to my girlfriend because she said don't get

22  myself in trouble like that, she'd rather take care of it

23  herself. The point was for her to turn it in, for me not

24  to have nothing involved in that. Before it goes down,

25  it didn't actually get to that point. As Mr. Perlmutter

said, I told them, everything, to the police. I volunteered. He didn't bother listening. He said I have to wait until I get in the courtroom and talk from there. From there, I complied to everything he said, from the time I was in the ACI up until today.

THE COURT: Mr. Philippe, the friend of yours you went to junior high school with, was that in New York or back in Haiti?

THE DEFENDANT: That was in New York.

THE COURT: Who is your friend? From whom did you receive the weapon?

THE DEFENDANT: Alex. Alex Marcel (phonetic). I'm not sure how you spell it, but he told me it's Marcel. I knew that for a long time. I didn't really pay attention how to spell it. I'm not sure.

THE COURT: Does he still live in New York?

THE DEFENDANT: I'm not sure exactly where he lives now, but he still lives in New York. The last time was a while ago.

THE COURT: Is there anything else you'd like to say?

THE DEFENDANT: That's the main reason I went through all of this. That's all I actually have to say right now.

THE COURT: Mr. Demers, anything further?

1        MR. DEMERS: No. Thank you, Your Honor.

2        THE COURT: Well, quite frankly, I fully expected to

3 sentence Mr. Philippe to some additional jail today, and

4 I think he expected, and probably still expects me to do

5 that. He has apparently received 144 days in jail. What

6 that means is he's probably very close to parole

7 consideration at this point.

8        Now, as far as I know, Mr. Philippe has no other

9 criminal record, and if he does, I hope Mr. Demers

10 interrupts me, but I'm not aware of any other criminal

11 record. That's much to his credit. He is a very

12 well-dressed, respectful, and apparently hardworking,

13 almost 25-year-old man. And if he was a street criminal

14 or drug user, drug peddler, gang member, someone who

15 regularly dealt with firearms, I am convinced he would

16 have a criminal record.

17        Now, I don't condone for a moment what he did,

18 because whether he did it stupidly or whether he did it

19 just looking the other way, what he did was convey a

20 weapon that has only one purpose -- and that is to kill

21 other human beings -- from New York City to Rhode Island

22 where there would be only one use for that weapon, to

23 intimidate and kill other human beings. I don't think

24 Mr. Philippe is involved in that kind of activity, but by

25 the transport, he would have allowed -- had the transport

1    been successful, exactly that type of behavior.

2        So I think it's a serious offense; however, I weigh

3    a number of circumstances, including the plea agreement

4    entered into by the State, and I'm going to partially

5    adopt the request of the defendant. I'm not going to

6    send Mr. Philippe back to jail, at least not now.

7        On Count 1, I hereby sentence Mr. Philippe to ten

8    years at the Adult Correctional Institution with 144 days

9    to serve, credit for time served, with the balance of

10    that time, ten years minus 144 days, suspended with a

11    like period of probation. Obviously credit for time

12    served. Payment of Court costs.

13        As a condition of his probation, I'm going to order

14    him to perform 500 hours of community service. This

15    isn't to help a friend. This is rolling up the sleeves

16    and working at a food kitchen, or a boy's club, or police

17    station, or for some municipality doing good work for the

18    public, because I think he's getting a very handsome

19    deal.

20        In addition, I must note that Count 2 is dismissed

21    on motion of the attorney general pursuant to Rule 48(a).

22    He pleads Count 3, and I sentence the defendant on that

23    count to one year at the Adult Correctional Institution,

24    suspended with probation, and payment of Court costs.

25        Counsel approach. I'm having a hard time reading

1    the plea form.

2                        (BENCH CONFERENCE)

3         THE COURT:  Count 4 is dismissed pursuant to

4    Rule 48(a) on motion of the attorney general.  And,

5    lastly, Count 5, based upon the nolo contendere plea, the

6    defendant is sentenced to a $250 fine, payment of Court

7    costs, no further loss of license.

8         Is there any correction to the sentence announced?

9         MR. PERLMUTTER:  No, Your Honor.

10        MR. DEMERS:  No, Your Honor.

11        THE COURT:  Mr. Philippe, I'm assuming that you are

12   going to be traveling back to New York because you want

13   to live there.  I don't know.  But as of this moment in

14   time, you are on Rhode Island probation and you need

15   permission to transfer your probation back to New York.

16   I suggest, before you leave the building, see Adult

17   Probation.  They are located on the first floor of this

18   building, and your attorney will guide you to their

19   office.

20        Is there anything further on this case?

21        MR. DEMERS:  No, Your Honor.

22        MR. PERLMUTTER:  Thank you very much, Your Honor.

23

24

25