UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>RICHARD PHILIPPE, )<br>)<br>Defendant )<br>) | Docket No. 1:19-cr-10328-FDS |

## GOVERNMENT'S TRIAL BRIEF

The United States, by and through the Acting U.S. Attorney for the District of Massachusetts and the undersigned Assistant U.S. Attorneys, hereby respectfully submits this trial brief in accordance with the Court's pretrial order, *see* Docket Entry ("D.E.") 234, and to identify relevant issues regarding the trial scheduled to begin on December 14, 2021. The government estimates that its case in chief will require approximately four days of testimony and evidence following jury selection. However, a trial schedule is somewhat less predictable with a defendant representing himself.

1. **The Superseding Indictment**

Defendant is charged in a two-count Superseding Indictment. In Count One, Defendant is charged with violating 18 U.S.C. §922(g) (being a felon in possession of ammunition) on or about July 5, 2019. In Count 2, he is charged with violating 18 U.S.C. §922(a)(3) (transportation and receipt of firearms acquired outside of state of residency) between on or about May 6, 2019 and on or about June 27, 2019. The Superseding Indictment reads in pertinent part:

### COUNT ONE

On or about July 5, 2019, in Taunton, in the District of Massachusetts, the defendant, RICHARD PHILIPPE, knowing that he was previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, ammunition, that is, nineteen rounds of .45 caliber ammunition.

## COUNT TWO

Between on or about May 6, 2019 and on or about June 27, 2019, in the District of Massachusetts, and elsewhere, the defendant, RICHARD PHILIPPE, not being a licensed importer, manufacturer, dealer and collector of firearms, did transport into, and receive in, the Commonwealth of Massachusetts, where he then resided, a Smith & Wesson pistol with serial number NBN8093, a Glock pistol with serial number BHDH478, and a North American Arms revolver with serial number L081849, said firearms having been purchased and otherwise obtained by the defendant outside the Commonwealth of Massachusetts.

As noted below and in the Government's Revised Proposed Jury Instructions, for purposes of simplifying the presentment to the jury, the government is electing to proceed only with regard two of the three firearms enumerated in Count Two: the Glock pistol bearing serial number BHDH478, and the North American Arms revolver bearing serial number L081849. In other words, the government does not wish for the jury to consider whether Defendant transported into or received in Massachusetts the Smith & Wesson pistol bearing serial number NBN8093.[1]

The elements of Count One are:

First, that on or about July 5, 2019, the defendant knowingly possessed nineteen rounds of .45 caliber ammunition.

Second, that the defendant possessed the ammunition "in or affecting commerce."

Third, that at the time he possessed the ammunition, the defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year.

Fourth, that at the time he possessed the ammunition, the defendant knew that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year.

---

[1] However, at trial the government does intend to introduce evidence of federal agents finding an empty firearm case bearing serial number NBN8093 in Defendant's warehouse office in Taunton, Massachusetts on July 5, 2019, at the same time and in the same place where the agents found an empty firearm case bearing serial number L081849.

The government has proposed one stipulation regarding the ammunition which would satisfy the second element of Count One (interstate nexus) and eliminate the need for testimony establishing that the ammunition meets the definition of "ammunition" under federal law. Additionally, the government has proposed a second stipulation concerning Defendant's prior conviction, in line with *Old Chief v. United States*, 519 U.S. 172 (1997) and *Rehaif v. United States*, 19 S. Ct. 2191 (2019). Alternatively, a third stipulation would permit Defendant to agree to the authenticity of judicial records the government will rely upon at trial while preserving his ability to challenge the fact of his prior conviction or knowledge thereof.

The elements of Count Two are:

First, that on or between May 6, 2019 and June 27, 2019, the defendant was not licensed as a firearms dealer; and

Second, that during this period, the defendant willfully transported into, and received in, the state in which the defendant resided one of the following firearms: a Glock pistol with serial number BHDH478 or a North American Arms revolver with serial number L081849, that the defendant purchased or otherwise obtained outside that state.

Should Defendant agree, proposed stipulations related to a traffic stop of Defendant in North Carolina in May 2019, and records of his use of rental cars between March 2019 and June 2019, would tend to eliminate the need for evidence and testimony on the subjects of which state Defendant resided in and the fact of his travel outside of Massachusetts.

2. **Summary of the Government's Case**

This matter arises from a law enforcement undercover purchase of two firearms and ammunition from a known felon in Brockton, Massachusetts on June 27, 2019. A check of records available to investigators at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") revealed that the firearms were purchased on or about June 11, 2019 and June 21, 2019 by a person named Austin Lumpkin ("Lumpkin"), from a licensed firearms dealer, Dahlonega Gold and Pawn,

located in Dahlonega, Georgia. ATF agents in Georgia interviewed Lumpkin on July 1, 2019. Lumpkin identified "Rich," with phone number ending -6780, as the individual to whom he had sold the two firearms involved in the undercover purchase. Lumpkin also admitted that he had sold dozens of other firearms to "Rich" over a several month period. Agents asked Lumpkin to place a recorded telephone call to "Rich" to set up another purchase of firearms. Lumpkin did so, and the recording suggests that "Rich" had a regular practice of driving to Georgia to purchase firearms from Lumpkin.[2] At trial, the government intends to introduce convincing evidence tying "Rich" to the phone number ending -6780, as discussed in part below.

In addition to being exposed by Lumpkin, Defendant was independently shown to be the source of the firearms and ammunition by the subject of the undercover firearms purchase, hereinafter referred to as the Cooperating Witness, or "CW." The CW admitted to engaging in a course of purchasing handguns and ammunition from "Rich" at his warehouse office in Taunton for approximately six-weeks before he was arrested. More specifically, the CW admitted to purchasing more than a dozen firearms from "Rich" out of the Taunton warehouse office, and then selling those firearms into criminal commerce in the Brockton area.[3] The CW identified Defendant as "Rich" with the phone number ending -6780. The CW also confirmed the location

---

[2] The government does not currently anticipate calling Lumpkin as a witness at trial. He is currently in custody in Texas, having been charged with murder following an altercation in which he shot and killed another person. The government does not intend to introduce any of Lumpkin's statements into evidence for the truth of the matter asserted. However, the government intends to introduce the recorded phone call between Lumpkin and Defendant through an agent who was present at the time of the conversation.

[3] The government currently intends to call the CW to testify with regard to his course of gun and ammunition purchasing from Defendant, including one of the firearms charged in Count Two.

of the Taunton warehouse where he purchased the firearms from Defendant, from an image of 30 Sherwood Drive that federal agents obtained online.

Three days later, on July 5, 2019, ATF agents executed a search warrant at Defendant's warehouse office. Defendant was present at the time of the search and was taken into custody on an outstanding federal warrant from the Northern District of Georgia.[4]

The search revealed various items indicative of firearms trafficking. Among the items seized were the 19 rounds of .45 caliber ammunition charged in Count One, and three firearms cases without the firearms, two of which are charged in Count Two (firearms with serial numbers L081849 and NBN8093 – although, as discussed above, the government intends to move forward only as to North American Arms revolver L081849). In addition, two mobile phones were seized from the scene and subsequently searched. Number ending -6780 was the phone number associated with one of those phones, and the search of that phone uncovered explicit communications with Lumpkin and others about transporting, buying, and selling firearms.

While the search was underway, agents *Mirandized* Defendant and obtained a signed waiver of those rights. In that interview, which was conducted in the warehouse parking lot, Defendant admitted, among other things, that he: i.) travelled to Georgia to purchase firearms that he intended to transport and sell in Massachusetts; ii.) did not have an "FFL"[5] but hoped to get one someday; iii.) sold firearms to at least two individuals in Massachusetts; iv.) made money from the sales of the firearms; v.) gave away and sold ammunition; and vi.) possessed ammunition in

---

[4] Defendant was initially charged by federal complaint in the district where he purchased the firearms. That complaint was dismissed when the instant prosecution was initiated.

[5] An acronym for "federal firearms license," knowledge of which is probative of Defendant's state of mind.

the warehouse office in a black computer bag.  The 19 rounds of ammunition charged in Count One of the Superseding Indictment were in fact discovered in a black computer bag, and Defendant subsequently led investigators to the same bag and identified it as the bag containing his ammunition.  Notably, the bag also contained a speeding ticket issued to Defendant in May 2019 in North Carolina.

During the interview, Defendant also stated that he could identify his source of firearms from his mobile phone and asked to review his phone contents.  Defendant acknowledged ownership of the phone associated with phone number ending -6780, and he executed a written consent to allow investigators to search the phone in his presence.  Together, they reviewed Defendant's contacts and communications, and Defendant identified "Austin," with phone number ending -2129, as his source of supply for the firearms. Phone number ending -2129 was Austin Lumpkin's mobile telephone number.  Defendant also identified two contacts from his phone to whom he had sold firearms in Massachusetts.

Defendant claimed during the interview that all of his sales of firearms were "legit."  When the investigator asked him what he did to ensure that the sales were "legit," Defendant replied, "not much."  Defendant then admitted that he never checked the identifications of his purchasers.

In addition to the core evidence outlined above, the government will offer testimony and evidence related to: i.) Defendant's 2004 felony firearm conviction in Rhode Island; ii.) Defendant's residence in Massachusetts at all times relevant to charged offenses; iii.) Defendant's lack of a federal firearms license; iv.) the intestate nexus examination of the ammunition; v.) a fingerprint examination linking Defendant to a picture of a gun in his hand; and vi.) testimony and documentary evidence of the sales of the firearms enumerated in Count Two of the Superseding

Indictment to Lumpkin, as well as other firearms sold to Lumpkin in Georgia with demonstrated nexuses to Defendant and the CW in Massachusetts.

Finally, the government intends to present evidence from Defendant's mobile phone, primarily in the form of electronic communications, images, and time, date, and location metadata of the relevant files stored on the phone. The evidence is highly probative of both Defendant's offense conduct and his state of mind. For instance, a photograph of North American Arms revolver L081849 in a hand was stored on Defendant's phone. A fingerprint examiner compared fingerprints visible in the photograph to Defendant's fingerprints, concluding that the sources of the fingerprints are one and the same person. Metadata associated with the photograph demonstrates that it was created outside of Massachusetts one day after it was purchased by Lumpkin in Georgia. At about the same time, Defendant sent the photograph in a message to a saved contact in his phone with whom he had previous discussions concerning the acquisition and sale of firearms.

### 3. Issues related to *Pro Se* Representation

After being represented by experienced defense attorneys during pretrial matters for over two years, Defendant has now elected to represent himself at trial. In August 2021, Magistrate Judge Boal found that Defendant knowingly and intelligently waived his Sixth Amendment right to counsel, *see* D.E. 218, and appointed Claudia S. Lagos, Esq. as standby counsel for Defendant. The government recognizes Defendant's right to represent himself once the Court makes an inquiry and concludes that his waiver of right to counsel is both knowing and intelligent. *See, e.g.* Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). With regard to that waiver, the First Circuit summarized in United States v. Woodard, 291 F.3d 95 (1st Cir. 2002) that:

> A defendant who seeks to relinquish her right to counsel must so state in unequivocal language. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. The waiver must be knowing, intelligent and voluntary. *Proctor,* 166 F.3d at 401. The trial judge must explicitly make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (internal quotation marks and citation omitted). In determining whether there is a competent waiver of the right to counsel, the judge "must investigate as long and as thoroughly as the circumstances of the case before him demand." *Proctor,* 166 F.3d at 402 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948)). We are guided by the principle that "[c]ourts must indulge in every reasonable presumption against waiver of the right tocounsel." *Id.*

Woodard, 291 F.3d at 109.

The right to self-representation is not absolute, and under some circumstances a district court may reject a knowing and intelligent waiver and require a defendant to proceed through counsel. Most notably, Faretta held that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. . . The right of self-representation is not a license to abuse the dignity of the courtroom . . . or . . . a license not to comply with relevant rules of procedural and substantive law." Faretta, 422 U.S. at 834 n. 46. S*ee also* United States v. Frazier–El, 204 F.3d 553, 560 (4th Cir. 2000) ("The right [to self-representation] does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process."). Numerous courts have declined to permit defendants to represent themselves when that representation would result in a delay or disruption of the proceedings, *see, e.g*. United States v. Edelmann, 458 F.3d 791, 808–09 (8th Cir. 2006) (upholding a district court's conclusion that defendant's request to proceed *pro se* was a tactic to "disrupt or delay the start of trial"), or when a defendant refused to acknowledge his status as a defendant and was otherwise hostile, disrespectful and inattentive. *See* United States v. Mabie, 663 F.3d 322, 329 (8th Cir. 2011) (defendant repeatedly disrupted the proceedings, was openly hostile, disrespectful to the court, and inattentive, and sought to use the court's subpoena power to

8

dissuade potential witnesses); United States v. Brunson, 482 F. App'x 811, 818 (4th Cir. 2012) (requiring counsel when defendants had filed numerous nonsensical *pro se* motions, and the district court had presided over numerous hearings in which the defendants put forth such nonsensical arguments); United States v. Mosley, 607 F.3d 555, 559 (8th Cir. 2010) (requiring counsel when defendant had filed a number of unintelligible and frivolous *pro se* pleadings and motions in the district court and had demonstrated an unwillingness to participate in pretrial proceedings).

Significantly, Defendant does not have a right to hybrid-representation, where he seeks to both represent himself at times, and at other times turns to counsel to represent him. Woodard, 291 F.3d 95, 110 ("A defendant has no right to hybrid representation." quoting United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir.1989)); United States v. Proctor, 166 F.3d 396, 402 (1st Cir. 1999)("a trial court may force a defendant to choose between proceeding to trial with an unwanted attorney and representing himself"). "A defendant does not have a constitutional right to choreograph special appearances by counsel." McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (highlighting the confusion which ensues from a defendant's frequent changes of heart about representation during trial). In light of the nature of Defendant's written filings in this matter and his *pro se* representation before Magistrate Judge Boal, the government would oppose Defendant's efforts to proceed at trial by some form of hybrid-representation, should he pursue it.

4. **Jury Instructions & Voir Dire**

The government has submitted a set of revised jury instructions and revised voir dire along with this trial brief. Several issues are notable. First, the government is electing not to proceed on that portion of Count Two which refers to "a Smith & Wesson pistol with serial number NBN8093." A gun case bearing serial number NBN8093 was found during execution of a search

warrant by federal agents on July 5, 2019 in Defendant's warehouse office. In addition, there is documentary evidence suggesting that this was one of the many firearms that Defendant purchased from Lumpkin in Georgia and then drove to Massachusetts for sale in the Commonwealth. However, the evidence with regard to the other two firearms is more straightforward.

The Glock pistol BHDH478 charged in Count Two was one of the firearms that the CW purchased from Defendant and sold to an undercover ATF officer on June 27, 2019. A Dahlonega Gold and Pawn bill of sale will be produced at trial documenting sale of that firearm to Lumpkin. Similarly, with regard to the North American Arms revolver L081849 charged in Count Two, investigators found an empty gun case bearing serial number L081849 when executing the search warrant in Defendant's warehouse office on July 5, 2019. As noted above, shortly after the firearm was purchased by Lumpkin at Dahlonega Gold and Pawn, Defendant photographed himself holding this distinctive firearm. Consistent with the pattern of Defendant trafficking firearms from Georgia to Massachusetts, the North American Arms revolver L081849 was recovered by an officer of the Brockton Police Department from a hotel room in Brockton, Massachusetts in October 2019.

The government also makes a request that the Court provide a set of preliminary instructions to the jury before opening statements. Specifically, the government requests that the Court provide instructions regarding what constitutes evidence and what does not. Such an instruction is particularly important in this matter where Defendant will speak regularly in open court as a *pro se* litigant. Finally, the government has requested that the Court provide an initial instruction on the elements of each offense. Focusing the jurors on the required elements at the outset of trial will provide them with helpful and necessary guidance in assessing what evidence is particularly relevant to their ultimate decision.

5. **<u>Anticipated Evidentiary Issues</u>**

    a.       *Admission of Defendant's Proffer Statements*

In addition to making *Mirandized* statements at the scene of the July 5, 2019 arrest and search, Defendant made statements in the presence of law enforcement, including ATF agents, on July 10, 2019, under the parameters of a written proffer agreement. The admissibility of statements from the proffer was the subject of a motion *in limine*. *See* Government's First Motion *In Limine* – Potential Admission of Proffer, D.E. 82. The Court deferred ruling on the matter until the trial was underway.

Advancing a defense in this case without violating the terms of the proffer agreement would be difficult for a skilled attorney. It will be even more difficult for a *pro se* defendant to walk that fine line. The government requests that, prior to the commencement of trial, the Court explain to Defendant the distinction between putting the government to its proof and asserting -- through argument, questioning, or testimony – a position inconsistent with statements he made during the proffer. The government notes that the defendant reiterated during the proffer that he purchased firearms and ammunition in Georgia, transported them to Massachusetts, and sold them in the Commonwealth. He also admitted that he knew he could not even possess a firearm lawfully because of his Rhode Island conviction. He also admitted in his proffer that the three empty firearms cases in his office were from firearms sales to buyers in Massachusetts who did not want the cases. The government anticipates that it will be extraordinarily difficult for Defendant to refrain from making assertions inconsistent with these statements, and therefore anticipates the proffer statements will become admissible.[6]

---

[6] The government has no intention of making mention of the proffer statements in its opening, or at any point before the Court concludes that the proffer agreement has been breached.

      b.      *Evidence of the Defendant's Felony Conviction: <u>State of Rhode Island v. Richard Philippe</u>, Indictment No. W2-03-0445A*

As noted above, the government has provided Defendant with a proposed stipulation regarding his prior felony conviction in Rhode Island. In the absence of such a stipulation, or in the event that Defendant suggests that he did not know that his prior conviction was punishable by a term of imprisonment exceeding one year, the government intends to offer three certified records: a copy of Defendant's Request to Enter a Plea of Nolo Contendere of Guilty, signed on March 15, 2004;[7] a certified copy of the Judgment of Conviction; and a certified, redacted copy of the transcript of Defendant's sentencing proceedings, held on July 30, 2004.[8] Such certified court records are admissible pursuant to Fed. R. Evid. 902(4) and 803(8) as self-authenticating public records. *See, e.g.* <u>United States v. Lechuga</u>, 975 F.2d 397, 399 (7th Cir. 1992) (admitting an order setting conditions of release, an appearance bond, and minutes from several court proceedings); <u>United States v. Lumumba</u>, 794 F.2d 806, 815 (2d Cir. 1986) (admitting trial transcript under Fed. R. Evid. 902(4)). In the event there is no stipulation by Defendant, the government also intends to offer the testimony of Defendant's probation officer along with copies of records which reflect multiple meetings with the probation officer, the completion of 500 hours of community service,

---

[7] The certification appears as follows:



[8] The government will also ask the Court to inform the jury that the transcript has been redacted by order of the Court, and that the entire transcript reflects a colloquy between the presiding Rhode Island Superior Court Associate Justice, counsel for Defendant, and Defendant.

signed Conditions of Probation that include an acknowledgement that a violation of Probation could result in the imposition of the sentence allowable by law, and a written warning given to Defendant that he remained on probation for the entirely of his ten-year suspended sentence.[9]

### c. Admission of Business Records: Enterprise Holdings Records & Utility Company Records

The government intends to offer certified business records from Enterprise Holdings Inc. d/b/a Enterprise Rent-A-Car and certified records of one or more utility companies during the testimony of its law enforcement witnesses.  Such records are admissible without the testimony of a custodian of records pursuant to Fed. R. Evid. 902(11) and 803(6).  See United States v. Denton, 944 F.3d 170, 183–84 (4th Cir. 2019) (business record certifications consistent with Fed. R. Evid. 902(11) provided adequate basis for admission even in the face of a Confrontation Clause challenge).  The government intends to use only the information that was recorded in the ordinary course of regularly conducted business activity of the companies, and the regularly conducted business activity reflected in the records was not performed in anticipation of litigation or undertaken to facilitate law enforcement purposes.  See United States v. Burgos-Montes, 786 F.3d 92, 120 (1st Cir. 2015).

Enterprise Holdings produced records to the government accompanied by a business records certification that meets the requirements of Fed. R. Evid. 803(6).  The government is still

---

[9] While neither Defendant nor his prior counsel appear to have ever so suggested, in the event that the Defendant suggests that this conviction was of some person other than he, the government is prepared to offer: i.) the testimony of a fingerprint examiner to establish that the "Richard Philippe" who was convicted and sentenced in the *State of Rhode Island v. Richard Philippe, Indictment No. W2-03-0445A* is the same person standing trial in the instant matter; and ii.) testimony of other witnesses demonstrating that Defendant gave identical biographical information (*e.g.* name, date of birth, place of birth, mother's name, social security number, etc.) in connection with the Rhode Island arrest that resulted in the felony conviction, and the Massachusetts arrest that commenced these proceedings.

awaiting a similar certification from the utility companies. Through this brief the government is providing notice to Defendant of its intent to rely on the Enterprise Holdings business records certification, which has been produced to Defendant in discovery at USAO-002251, and it will do the same with the business records certifications from the utility companies once they are received. *See* Fed. R. Evid. 902(11).

d. *Admission of Registry of Motor Vehicle Records*

The government expects to offer certified records from the Massachusetts Registry of Motor Vehicles ("RMV") and/or Department of Transportation ("DOT") during the testimony of one of its law enforcement witnesses. These records, too, may be admitted without the appearance of a witness from Massachusetts RMV/DOT, pursuant to Fed. R. Evid. 803(8) and 902(4). *See, e.g.* United States v. Mirelez, 59 F. App'x 286, 287, 2003 WL 328826 (10th Cir. 2003) (*unpublished*) (approving admission of Kansas Division of Vehicle records under Fed.R.Evid. 803(8) & 902(4)).

e. *Recording of Telephone Call on July 1, 2019 and Transcript*

The government intends to introduce a recording of a telephone call between Defendant and Austin Lumpkin, which occurred on July 1, 2019. Defendant's statements in the recording will be offered as admissions under Fed.R.Evid.801(d)(2). Lumpkin's statements will not be offered for the truth of the matter asserted, but only to provide necessary context for Defendant's statements. *See*, *e.g.*, United States v. Perez-Vasquez, 6 F.4th 180, 197 (1st Cir. 2021) (admitting a conversation between a CW and the defendant, holding that, "CW-1's statements were admitted only to provide context for statements made by other . . . co-conspirators").

The government has prepared a transcript of the July 1, 2019 recording and provided a copy to Defendant. The government requests that copies of the transcript be shared with each juror

as an aid while listening to the recording. *See, e.g.,* United States v. Ackies, 918 F.3d 190, 205 (1st Cir.), cert. denied, 140 S. Ct. 662, 205 L. Ed. 2d 443 (2019) (transcripts used to assist jurors in listening to recorded calls); United States v. Carbone, 798 F.2d 21, 26 (1st Cir. 1986) (approving the use of transcripts as a jury aid in following tape recording playbacks). The government does not seek the admission of the transcript into evidence; it only seeks to employ it as an aid to the jury. *Id.*

      f.    *Evidence of the Transportation, Purchases, Sales or Attempted Sales of Uncharged Firearms During the Single Course of Conduct Charged in the Superseding Indictment*

The government intends to offer in its case in chief testimony and evidence regarding the events leading up to the charged conduct. The events in question necessarily involve references to the transportation, purchases, sales and attempted sales of other firearms not explicitly charged in the Superseding Indictment.

For instance, the evidence will show that Lumpkin purchased dozens of guns from Dahlonega Gold and Pawn during the time period in which he was selling firearms to Defendant. The government also intends to introduce evidence of communications between Defendant and Lumpkin, which suggest additional firearms transactions and illustrate the manner in which Defendant would place orders with Lumpkin or have Lumpkin effectively shop in Dahlonega Gold and Pawn on his behalf. Communications, images, and metadata stored on Defendant's phone are consistent with the purchase of the North American Arms revolver L081849, charged in Count Two of the Superseding Indictment, by Lumpkin, who in turn sold it to Defendant, on or about June 21, 2019, in Georgia. These critical communications, images, and metadata are reflected within this larger text message conversation between Defendant and Lumpkin.

Separately, the CW is expected to testify in summary fashion about how he was introduced to Defendant as a source of firearms and then met Defendant on multiple occasions in May and June 2019, for the purpose of ordering and receiving firearms. In the course of this dealing, Defendant sold the CW the Glock pistol BHDH478, charged in Count Two of the Superseding Indictment, along with more than a dozen other firearms and many rounds of ammunition. The CW is expected to testify that he solicited buyers for firearms on social media platforms such as Facebook and Snapchat using photographs. Some of the photographs he posted or sent were of firearms that he purchased from Defendant, while other firearms photographs were posted or sent in attempts to broker sales for Defendant.

The testimony of the CW, the social media photographs of firearms that the CW purchased from Defendant or was brokering, and the electronic communications, images, and metadata stored on Defendant's mobile telephone, all suggesting the transportation, purchases, sales, or attempted sales of other firearms not charged in the Superseding Indictment, will be offered pursuant to Fed. R. Evid. 401 and 402, as evidence of a single course of contemporaneous conduct leading up to the charged crimes. *See* United States v. Ladd, 885 F.2d 954, 959 (1st Cir. 1989) (admitting evidence even "though not an element of the crime charged, nevertheless 'pertained to a chain of events forming the context ... and set-up of the crime,' helping to 'complete the story of the crime on trial.'") (internal citations omitted); United States v. Currier, 821 F.2d 52, 55 (1st Cir. 1987) ("[E]vidence of other criminal acts [is] admissible ... when [it is] so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.") (internal citations and quotations omitted); United States v. Ocasio-Rivera, 991 F.2d 1, 4 (1st Cir. 1993) ("It is well settled in the criminal law that evidence of prior uncharged conduct [or, as here, evidence of prior

conduct related to a defunct count] is relevant and admissible to complete the story of a charged crime by illuminating the chain of events leading up to the charged crime and the context in which the crime occurred."); United States v. Flores-Rivera, 787 F.3d 1, 23–24 (1st Cir. 2015) (citing United States v. Watson, 695 F.3d 159, 165 (1st Cir. 2012) for the proposition that "the full weight of [the narrative] would be lost on the jury absent the introduction of some limited factual foundation"). This evidence provides necessary context for the charged acts, demonstrates the seller/buyer relationship between Defendant and the CW, and demonstrates the buyer/seller relationship between Defendant and Lumpkin. Critically, this evidence corroborates many of the admissions Defendant made in his *Mirandized* post-arrest statement, and much of the anticipated testimony of the CW. This evidence also lends context to the recorded call between Lumpkin and Defendant on July 1, 2019, in which Defendant agrees to, ". . . just come down as I always do, and me and you can figure things out," in response to Lumpkin's offer to sell him additional firearms.

In short, the evidence is directly relevant and probative of the transactions that are inextricably intertwined with the charged conduct – Defendant's willful transportation and receipt of Glock pistol BHDH478 and North American Arms revolver L081849, to and in Massachusetts, and his knowing possession of ammunition.

Even if Defendant were to suggest that this evidence is "other act" evidence which falls within the ambit of Fed. R. Evid. 404, it would still be admissible under Rule 404(b) as "especially relevant" to motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake. *See* United States v. Tkhilaishvili, 926 F.3d 1, 15 (1st Cir.), *cert. denied*, 140 S. Ct. 403, 205 L. Ed. 2d 239 (2019), *and cert. denied*, 140 S. Ct. 412, 205 L. Ed. 2d 237 (2019); United States v. Devin, 918 F.2d 280, 287–88 (1st Cir. 1990). The evidence in question establishes that in the spring of 2019, Defendant possessed the corrupt intent to sell firearms and ammunition which he had

17

acquired in Georgia and transported to Massachusetts. Defendant's intent and motive for possessing the ammunition in Count One, and his preparation, plan, and practice for the transportation and receipt of the firearms charged in Count Two, are borne out by the evidence suggesting his repeated purchases of firearms from Lumpkin, and his repeated sale of firearms to the CW. Finally, the evidence also tends to demonstrate his knowing possession of ammunition, as well as his knowing transportation and receipt of the firearms. *See, e.g.,* United States v. Appolon, 715 F.3d 362, 373–74 (1st Cir. 2013) (permitting admission of uncharged conduct which "took place within the same general timeframe as the charged ones, further supporting the notion that they were part and parcel of the same scheme" and was probative of knowledge and intent); United States v. Almeida, 748 F.3d 41, 50–51 (1st Cir. 2014) (similar but uncharged conduct admitted to prove absence of mistake and intent).

g. *Expert Testimony*

The government intends to introduce evidence from ATF Special Agent Christopher F. Scott regarding his forensic analysis of Defendant's mobile phone with number ending -6780, which was seized from Defendant's warehouse office following his arrest on July 5, 2019. While such testimony has been admitted in other jurisdictions without qualifying the witness as an expert under Fed. R. Evid. 702, *see, e.g.*, United States v. Ovies, 783 F. App'x 704, 707 (9th Cir. 2019), cert. denied, 140 S. Ct. 820, 205 L. Ed. 2d 498 (2020) ("The district court did not abuse its discretion by allowing [the agent] to testify about using Cellebrite to extract data from [the defendant's] cell phone without first qualifying him as an expert witness under Federal Rule of Evidence 702.") ; United States v. McLeod, 755 F. App'x 670, 673 (9th Cir.), cert. denied, 139 S. Ct. 1641, 203 L. Ed. 2d 915 (2019) (same), in this instance, the government intends to establish such qualifications during the course of Agent Scott's testimony. *Cf.* United States v. Hill, 818

F.3d 289, 296 (7th Cir. 2016) (testimony regarding cellular site data, "fits easily into the category of expert testimony, such that Rule 702 governs its admission").

The government also intends to call Samuel Files ("Files"), a fingerprint examiner from the Bureau of Criminal Investigation at the Plymouth County Sherriff's Office, to testify concerning a fingerprint analysis he performed on a photo of Defendant's hand holding the North American Arms revolver L08184, charged in Count Two of the Superseding Indictment. Files will also be prepared to testify about comparisons he performed using fingerprints from Defendant's 2003 and 2019 arrests, and to express the conclusion that the source of those fingerprints was the same person. The government will offer this testimony pursuant to Fed. R. Evid. 702. *See, e.g.,* United States v. Pena, 586 F.3d 105, 110 (1st Cir. 2009) (admitting expert fingerprint testimony and acknowledging district court's statement that, "the case law is overwhelmingly in favor of admitting fingerprint experts under virtually any circumstance"); United States v. Vargas, 471 F.3d 255, 266 (1st Cir. 2006) (no error in admitting fingerprint examiner testimony pursuant to Rule 702).

    h. *Virtual Testimony*

Absent stipulations from Defendant as outlined above, or in the event of adverse rulings regarding the foundation for documents which the government seeks to admit through a summary witness, the government requests to call certain foundational witnesses remotely to avoid burdensome travel and potential exposure to COVID. The government requests the opportunity to supplement this trial brief in this regard once Defendant has determined whether he will agree to any or all of the proposed stipulations.

                                                     Respectfully submitted,

                                                     NATHANIEL R. MENDELL
                                                     Acting United States Attorney

By: /s/ John T. McNeil
JOHN T. McNEIL
FRED M. WYSHAK III
Assistant U.S. Attorneys

Date:   November 30, 2021

### CERTIFICATE OF SERVICE

I, Fred M. Wyshak, III, Assistant United States Attorney, do hereby certify that this document, filed through the Electronic Case Filing system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that paper copies will be sent to Defendant on December 1, 2021, addressed as follows:

Inmate Richard Philippe
USMS 01671-138
D.W. Wyatt Detention Facility
950 High Street
Central Falls, Rhode Island 02863

LEGAL MAIL OPEN IN FRONT OF DETAINEE

Fred M. Wyshak, III
FRED M. WYSHAK, III
Assistant U.S. Attorney

Date:   November 30, 2021