# Exhibit 2

1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA,         )
                                       )
5    vs.                               )  Criminal Action
                                       )
6    RICHARD PHILIPPE,                 )  No. 19-10328-FDS
                     Defendant         )
7                                      )
                                       )
8                                      )

9

10   BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

11                      JURY TRIAL DAY 2

12           TESTIMONY OF ▓▓▓▓▓▓▓▓ ONLY

13

14

15
             John Joseph Moakley United States Courthouse
16                      1 Courthouse Way
                        Boston, MA 02210
17

18                      December 15, 2021
                        8:30 a.m.
19

20

21

22

23                      Valerie A. O'Hara
                      Official Court Reporter
24       John Joseph Moakley United States Courthouse
                        1 Courthouse Way
25                      Boston, MA 02210
                  E-mail: vaohara@gmail.com

For The United States:

    United States Attorney's Office, by JOHN T. McNEIL, ESQ.,
ASSISTANT UNITED STATES ATTORNEY, and FRED M. WYSHAK, III,
ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200,
Boston, Massachusetts  02110;

For the Defendant:

    Richard Philippe, pro se;

Standby Counsel:

    Scully & Lagos, by CLAUDIA S. LAGOS, ATTORNEY,
101 Summer Street, Boston, MA 02110.

1          TESTIMONY OF ███████████ ONLY

2          MR. McNEIL:  The United States calls

3  ███████████████

4          I do note, your Honor, that Mr. ████████ may take a

5  bit.

6          THE COURT:  Let's use the next 15 minutes.

7          ██████████████ having been duly sworn by the Clerk,

8  testified as follows:

9                    DIRECT EXAMINATION

12:43PM 10 BY MR. McNEIL:

11 Q.   Good morning, sir.  You can take your mask off if you'd

12 like.  If you could introduce yourself to the jury and spell

13 your name for the record, please.

14 A.   ████████████  ███████████████████

15 Q.   Mr. ███████ where do you live?

16 A.   In Holbrook, Massachusetts.

17 Q.   How long have you lived in Holbrook?

18 A.   Going on four years.

19 Q.   And prior to living in Holbrook, where did you live?

12:44PM 20 A.   In Brockton.

21 Q.   And were you born in Brockton?

22 A.   No, I was born in Stoughton.

23 Q.   For how long did you live in Stoughton before you moved to

24 Brockton?

25 A.   Not long at all.  As soon as I was born, we moved to

| | | |
|---|---|---|
| 1 | | Brockton. |
| 2 | Q. | And so is it fair to say you grew up in Brockton? |
| 3 | A. | Yes. |
| 4 | Q. | And do you have any siblings? |
| 5 | A. | Yes. |
| 6 | Q. | And what kind of siblings do you have? |
| 7 | A. | Two brothers. |
| 8 | Q. | If you could keep your voice up. |
| 9 | A. | Two brothers. |
| 12:44PM 10 | Q. | And what are your brother's names? |
| 11 | A. | ██████████████ . |
| 12 | Q. | ██████████████ , are they older brothers or younger |
| 13 | | brothers? |
| 14 | A. | They are younger. |
| 15 | Q. | So you're the oldest in the family? |
| 16 | A. | Yes. |
| 17 | Q. | And where did you go to school? |
| 18 | A. | I went to Arnone Elementary School. |
| 19 | Q. | And where is that? |
| 12:45PM 20 | | THE COURT:  Surely we don't need to know where his |
| 21 | | elementary school is located.  Let's speed this along. |
| 22 | | MR. McNEIL:  All right. |
| 23 | Q. | Did you attend middle school and high school in Brockton |
| 24 | | as well? |
| 25 | A. | Yes. |

1   Q.   All right.  And where did you attend high school?

2   A.   I didn't make the high school, back East Junior High.  I

3   got kicked out of East Junior High School, so I went to

4   alternative school.  I didn't make it to Brockton High.

5   Q.   Why?

6   A.   I got caught with a pocketknife.

7   Q.   And where did you end up going after you got kicked out of

8   junior high?

9   A.   Alternative School called Phoenix.

12:45PM 10   Q.   And how long did you attend Phoenix School?

11   A.   About two years.

12   Q.   And did you have any schooling after those two years at

13   Phoenix School?

14   A.   No.

15   Q.   Why is that?

16   A.   Because I went to jail basically for two years.

17   Q.   And what age were you when you first went to jail?

18   A.   Seventeen.

19   Q.   And what crimes were you sent to jail for?

12:46PM 20   A.   Class B substances.

21   Q.   Class B substances.  What were you doing, in fact?

22   A.   Sorry.

23   Q.   Sorry, what were you selling at that time?

24   A.   Crack cocaine.

25   Q.   And that was, sorry, at age 17; is that right?

1    A.    Yes.

2    Q.    And how long did you go to jail for at that point?

3    A.    Twenty-five months.

4    Q.    And when you got out of jail, what did you do?

5    A.    Sat around for a while, but eventually I started selling

6    drugs again.

7    Q.    And so you got out of jail around what age?

8    A.    Nineteen.

9    Q.    And how long did it take you to start selling drugs again?

12:46PM 10    A.    Under a year.

11    Q.    And at some point, were you arrested and convicted of drug

12    dealing a second time?

13    A.    Yes.

14    Q.    And how old were you then?

15    A.    Twenty-one.

16    Q.    And how much time did you spend in jail that time?

17    A.    Only two months.

18    Q.    And after you got out of jail a second time, what did you

19    do?

12:47PM 20    A.    I ended up getting a job.

21    Q.    What kind of job did you get?

22    A.    Worked at the Texas Roadhouse.

23    Q.    And what did you do at the Texas Roadhouse?

24    A.    Started out as a dishwasher and got promoted to line cook.

25    Q.    How long did you work at the Texas Roadhouse?

```
 1    A.   About 18 months.

 2    Q.   And what happened at the end of 18 months?

 3    A.   I ended up getting fired.

 4    Q.   Why were you fired?

 5    A.   Being late a lot.

 6    Q.   And what did you do after you got fired?

 7    A.   Eventually started selling drugs again.

 8    Q.   And how old were you then roughly when you left the

 9    Texas Roadhouse and started selling drugs again?

10    A.   Probably around 24.

11    Q.   How old are you now?

12    A.   Thirty-two.

13    Q.   All right.  And you were arrested in this case at what

14    age?

15    A.   I think I was 30.

16    Q.   All right.  So between the time you left the

17    Texas Roadhouse working and the time you were arrested in this

18    case, what did you do?

19    A.   Can you repeat that?

20    Q.   How were you making money between the time you lost your

21    job at the Texas Roadhouse and when you got arrested in this

22    case?

23    A.   Basically selling drugs again.

24    Q.   What kind of drugs were you selling?

25    A.   I was selling crack cocaine again, marijuana, and a little
```

1    bit of Percocets.

2    Q.   Do you recall being arrested in June of 2019?

3    A.   Yes.

4    Q.   And do you recall why you were arrested, what you were

5    arrested for?

6    A.   Yes.

7    Q.   And what was that?

8    A.   Possession of firearms.

9    Q.   And how did it come about that you were in possession of

12:49PM 10    firearms?

11    A.   Because I was buying them.  Oh, sorry, ask that again,

12    sorry.

13    Q.   How did it come -- you said you were arrested for

14    possession of firearms.  How is it that agents found you in

15    possession of firearms?

16    A.   Making a sale to an undercover agent.

17    Q.   And how many guns did you sell to an undercover agent?

18    A.   Two.

19    Q.   Do you remember how much he paid you for those?

12:49PM 20    A.   2200.

21    Q.   And did you sell him any ammunition, too?

22    A.   Yes.

23    Q.   Now, where did you get those firearms?

24    A.   From Rich.

25    Q.   Rich, is Rich in the courtroom today?

```
 1   A.   Yes.

 2             THE DEFENDANT:  Objection.

 3             THE COURT:  Overruled.

 4   Q.   Could you point him out for the jury?

 5   A.   (Witness complies).

 6   Q.   What's he wearing today?

 7             THE DEFENDANT:  Objection.

 8             THE COURT:  Overruled.

 9   A.   Blue overcoat.

10             MR. McNEIL:  If the record reflect that the witness

11   has identified the defendant.

12             THE COURT:  Yes.

13             THE DEFENDANT:  Objection.

14             THE COURT:  Overruled.

15   Q.   Now, have you pleaded guilty to a crime in connection with

16   this arrest?

17   A.   Yes.

18   Q.   And what crime did you plead guilty to?

19   A.   Possession of firearms.

20   Q.   I'm showing you what's been marked Exhibit Number 29.  Do

21   you recognize that document?

22   A.   Yes.

23   Q.   What's that document?

24   A.   It's a plea document.

25             MR. McNEIL:  Your Honor, I'd like to offer in
```

12:49PM (line 10)

12:50PM (line 20)

1    Exhibit 29.

2              THE COURT:  All right.  It's admitted, 29.

3              (Exhibit No. 29 received into evidence.)

4              MR. McNEIL:  And I'm going to leave it on the Elmo if

5    that's okay, show it to the jury.

6    Q.   Okay.  So this is your plea agreement; is that right?

7    A.   Yes.

8    Q.   And it was signed on or about February, 2020?

9    A.   Yes.

12:51PM 10  Q.   I'm going to turn to the last page, the second last page

11   of that agreement and ask you do you recognize the signature on

12   that page?

13   A.   Yes.

14   Q.   Whose signature is that?

15   A.   It's my signature.

16   Q.   All right.  And the signature below that?

17   A.   It's my lawyer's signature.

18              MR. McNEIL:  If I may have the overhead just for the

19   witness, please.

12:52PM 20  Q.   All right.  I'm now showing you Exhibit Number 30.  Do you

21   recognize this?

22   A.   Yes.

23   Q.   What is that?

24   A.   It's a corporation document.

25              MR. McNEIL:  Your Honor, I'm going to offer

1    Exhibit Number 30.

2             THE COURT:  It's admitted, Exhibit 30.

3             (Exhibit No. 30 received into evidence.)

4    Q.   This is a document signed around the same time; is that

5    right?

6    A.   Yes.

7    Q.   And I'm turning to page 4 of that document -- I'm sorry,

8    page 5 of that document.  Do you recognize the signature there?

9    A.   Yes.

12:52PM 10   Q.   Whose signature is that?

11   A.   It's my signature.

12   Q.   And looking below that, whose signature is that?

13   A.   It's my lawyer's signature.

14   Q.   So these, is it fair to say that these two documents,

15   Exhibit Number 29 and Exhibit Number 30 comprise the agreement

16   or make up the agreement that you have with the United States

17   in this case?

18   A.   I'm sorry, can you say that one more time?

19   Q.   Sure.  Are these two documents together, Exhibit Number 29

12:53PM 20   and 30, do these essentially make up the agreement, the

21   complete agreement that you have with the United States in this

22   case?

23   A.   Yes.

24   Q.   In your own words, can you tell the jury briefly what

25   those two documents say?

1    A.   The plea one is I plead guilty to possession of firearms

2    and I will get recommended the low end of the guideline

3    sentencing, and the cooperation is I'll testify to tell the

4    truth, and the government will let the Judge know when we're

5    done about the government and hoping to get a lower sentence

6    but understand that no promises have been made, and it's up to

7    the Judge at the end of the day to decide.

8    Q.   And do you understand that if you were to testify falsely,

9    you would breach both of these agreements?

10   A.   Yes.

11   Q.   You testified a moment ago that the crime you pleaded

12   guilty to was possession of a firearm, and it was related to a

13   sale you made to some undercover ATF officers; is that correct?

14   A.   Yes.

15   Q.   All right.  Can you tell the jury how is it that that

16   undercover sale came about?  Please keep your voice up so I can

17   hear you.

18   A.   I was trying to sell them to somebody that wanted them for

19   their cousin, and the cousin was an ATF agent the whole time.

20   Q.   All right.  And how were you offering these guns for sale?

21   A.   I will do it through the text messages or contacts on my

22   phone, Snapchat, Facebook.

23   Q.   Do you recall when this gun sale that you made to two

24   agents happened?

25   A.   It was in June.

|   |   |   |
|---|---|---|
| 1 | Q. | Early June or late June? |
| 2 | A. | It was late June. |
| 3 | Q. | And do you recall the time of day it happened? |
| 4 | A. | Probably around 4:00. |
| 5 | Q. | And do you recall where it happened? |
| 6 | A. | On Hamilton Street. |
| 7 | Q. | And where is ███ Street? |
| 8 | A. | Hamilton.  It's in Brockton. |

9   Q.   And did it happen in the street, in the building?  Where

12:55PM 10   did it happen?

11   A.   In the back yard.

12   Q.   And what building's back yard did you make the sale?

13   A.   It was my brother's apartment.

14        MR. McNEIL:  May I approach the witness, your Honor?

15        THE COURT:  Yes.

16   Q.   Mr. ███  I'm showing you what's already been admitted

17   as Government Exhibit 26.1 and what's already been admitted as

18   Government Exhibit 26.2.  Do you recognize both those items?

19   A.   Yes.

12:56PM 20   Q.   What do you recognize them to be?

21   A.   A box and a gun.

22   Q.   All right.  Do you recognize them to be a particular box

23   and a gun?

24   A.   Yes, a Glock box and 9 Taurus.

25   Q.   And how does this gun compare with the gun that you sold

1    to undercover agents on the 27th of June, 2019?

2    A.   How does it compare?

3    Q.   Yes.

4    A.   Well, it looks like everything besdies the lock, it's a

5    different lock.

6    Q.   What about the lock here?

7    A.   I think that's the lock that maybe the agents locked it.

8    Q.   So, is this the same kind of gun that you sold to agents

9    that day?

12:57PM 10   A.   Yes.

11   Q.   And when you sold agents the gun that day, did you sell

12   them in a box or outside of a box?

13   A.   It was in boxes.

14   Q.   And how do these two items compare to the gun that you

15   sold to agents that day?  Are they similar?  The same?

16   Different?

17   A.   I can't see the other one because the box is closed.

18   Q.   I'm going to show you a different box.  What kind of box

19   is this?

12:58PM 20   A.   It's a Glock box.

21   Q.   What's kind of firearm is this?

22   A.   It's a 9 Taurus -- I'm sorry, it's a Glock gun.  I'm

23   sorry.

24   Q.   Take a look at it, just so --

25   A.   I can see it now.  I thought it was the 9.

1    Q.   All right.  Let me show you --

2         THE COURT:  It's one o'clock.  Why don't we pause here

3    and pick up tomorrow morning.  All right.  Ladies and

4    gentlemen, please remember my instructions not to discuss the

5    case among yourselves or with anyone else.  Thank you for your

6    cooperation in letting us start on time.  I know some of you

7    live pretty far away, in New Bedford, Falmouth and Newburyport.

8    I really appreciate it.  We'll see you tomorrow morning at

9    9:00.  Thank you.

12:59PM 10         THE CLERK:  All rise.

11         THE COURT:  You can be seated.  Based on the current

12   pace, when do you expect to rest?

13         MR. WYSHAK:  Your Honor, I think we're still largely

14   on pace for resting at the end of Friday.

15         THE COURT:  At the end of Friday, possibly spilling

16   into Monday?

17         MR. WYSHAK:  Possibly spilling into Monday, one or two

18   witnesses, possibly, but I think we're still on pace.

19         THE COURT:  Okay.  All right.  I will see you all at

01:00PM 20   8:30 tomorrow morning.  Thank you.

21         MR. WYSHAK:  Yes, your Honor.

22         (Whereupon, the hearing was adjourned at 1:00 p.m.)

23

24

25

1                   C E R T I F I C A T E

2

3

4             UNITED STATES DISTRICT COURT )

5             DISTRICT OF MASSACHUSETTS ) ss.

6                   CITY OF BOSTON )

7

8

9        I do hereby certify that the foregoing transcript,

10  Pages 1 through 16 inclusive, was recorded by me

11  stenographically at the time and place aforesaid in Criminal

12  Action No. 19-10328-FDS, UNITED STATES of AMERICA vs.

13  RICHARD PHILIPPE and thereafter by me reduced to typewriting

14  and is a true and accurate record of the proceedings.

15        Dated this 30th of December, 2021.

16

17                  s/s Valerie A. O'Hara

18        _____

19             VALERIE A. O'HARA

20             OFFICIAL COURT REPORTER

21

22

23

24

25

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA,          )
                                        )
5    vs.                                )  Criminal Action
                                        )
6    RICHARD PHILIPPE,                  )  No. 19-10328-FDS
                     Defendant          )
7                                       )
                                        )
8                                       )

9

10   BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

11
                          JURY TRIAL DAY 3
12
                 TESTIMONY OF ██████████ ONLY
13

14

15
             John Joseph Moakley United States Courthouse
16                        1 Courthouse Way
                          Boston, MA 02210
17

18                       December 16, 2021
                             8:30 a.m.
19

20

21

22

23                       Valerie A. O'Hara
                        Official Court Reporter
24        John Joseph Moakley United States Courthouse
                          1 Courthouse Way
25                        Boston, MA 02210
                    E-mail: vaohara@gmail.com

1

For The United States:

2

    United States Attorney's Office, by JOHN T. McNEIL,

3

ASSISTANT UNITED STATES ATTORNEY, and FRED M. WYSHAK, III,
ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200,

4

Boston, Massachusetts  02110;

5

For the Defendant:

6

    Richard Philippe, pro se;

7

Standby Counsel:

8

    Scully & Lagos, by CLAUDIA S. LAGOS, ATTORNEY,
101 Summer Street, Boston, MA 02110.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          RESUMED TESTIMONY OF ███████████ ONLY

2          THE COURT:  Mr. McNeil.

3          MR. McNEIL:  Yes, the government calls

4     ████████████████

5          THE COURT:  Okay.  Just again to remind everyone, this

6     is the witness whose testimony we interrupted, so we're going

7     to resume.

8          All right.  Mr. ████████  I'll ask you to take off your

9     mask while you're testifying.  Do you understand you're still

11:11AM 10     under oath from yesterday?

11          MR. ████████████  Yes.

12          THE COURT:  All right.  Mr. McNeil.

13                         ████████████ RESUMED

14               DIRECT EXAMINATION, CONTINUED

15     BY MR. McNEIL:

16     Q.   Mr. ████████  where we left off yesterday, I was asking you

17     a series of questions about firearms that you sold to

18     undercover officers on June 27th.  Do you recall that?

19     A.   Yes.

11:11AM 20     Q.   All right.

21          MR. McNEIL:  Your Honor, may I approach the witness?

22          THE COURT:  Yes.

23     Q.   I'm going to put before you, Mr. ████████  already admitted

24     Exhibit 26.1 and 26.2, a case and a gun and Exhibit 27.1 and

25     Exhibit 27.2.  I'm also going to put before you a bag that's

4

1    been admitted as Exhibit Number 28.  All right.  Starting with

2    Exhibit 26.1 and 2, do you recognize that?

3    A.    Yes.

4    Q.    What do you recognize that to be?

5    A.    It's a Glock 9 and the Taurus gun.

6    Q.    And do you recognize those to be particular firearms?

7    A.    Yes.

8    Q.    What are they?

9    A.    The guns I sold to the agent.

11:12AM 10    Q.    All right.  So the two guns you sold to the agent on

11    June 27th?

12    A.    Yes.

13    Q.    Looking at Exhibit Number 28, do you recognize that?

14    A.    Yes.

15    Q.    Does that look familiar to you?

16    A.    Yes.

17    Q.    What does that look to you to be?

18    A.    The ammunition I gave with the firearms.

19    Q.    When you gave agents that ammunition, was it wrapped in

11:13AM 20    the same way?

21    A.    It was a Glad baggy.

22    Q.    Sorry?

23    A.    It was in a Glad baggy.

24    Q.    All right.  Was the baggy opened?  Was it tied?  What was

25    its condition?

1   A.   It was tied.

2   Q.   And those are all the items you sold to the agent on the

3   27th?

4   A.   Yes.

5   Q.   Where did you get these items?

6   A.   From Rich.

7   Q.   When you say Rich, who are you talking about?

8        THE DEFENDANT:  Objection.

9        THE COURT:  Overruled.

10  A.   I'm sorry.

11  Q.   When you say Rich, who are you talking about?

12  A.   Philippe.

13  Q.   And yesterday you identified Mr. Philippe?

14  A.   Yes.

15  Q.   Is he present in the courtroom today?

16  A.   Yes.

17  Q.   Can you just point him out to the jury?

18  A.   Over here.  (Indicating)

19        THE DEFENDANT:  Objection.

11:13AM 20        THE COURT:  Overruled.

21  Q.   Now, other than these two firearms and that ammunition,

22  did you purchase any other firearms and ammunition from

23  Mr. Philippe?

24  A.   Yes.

25  Q.   And approximately how many firearms did you purchase from

```
 1    Mr. Philippe?

 2              THE DEFENDANT:  Objection.

 3              THE COURT:  Overruled.

 4    A.    Around 14.

 5              THE DEFENDANT:  Objection.

 6              THE COURT:  Overruled.

 7    Q.    When did you )so you were arrested on June 27th.  When did

 8    you first come to know Mr. Philippe?

 9    A.    I believe some time in May.

11:14AM 10              THE DEFENDANT:  Objection.

11              THE COURT:  Overruled.

12    Q.    How did you meet Mr. Philippe?

13    A.    Through a friend.

14              THE DEFENDANT:  Objection.

15              THE COURT:  Overruled.

16    Q.    Who was the friend?

17              THE DEFENDANT:  Objection.

18              THE COURT:  Overruled.

19    A.    Ronson.

11:14AM 20    Q.    And how did Ronson introduce you to Mr. Philippe?

21    A.    In person.

22              THE DEFENDANT:  Objection.

23              THE COURT:  Overruled.

24    Q.    And where did you first meet with Mr. Philippe?

25    A.    I was in Taunton.
```

|  | | |
|---|---|---|
| 1 | | THE DEFENDANT:  Objection. |
| 2 | | THE COURT:  Overruled. |
| 3 | Q. | Where in Taunton is that? |
| 4 | A. | That's at a warehouse. |
| 5 | | THE DEFENDANT:  Objection. |
| 6 | | THE COURT:  Overruled. |
| 7 | Q. | Do you recall the street name of the warehouse in Taunton? |
| 8 | A. | I believe it was Sherwood. |
| 9 | | THE DEFENDANT:  Objection. |
| 11:14AM 10 | | THE COURT:  Overruled. |
| 11 | | MR. McNEIL:  If you could bring up Exhibit Number 6, |
| 12 | please. | |
| 13 | Q. | Mr. ▉▉▉▉ can you see that picture? |
| 14 | A. | Yes. |
| 15 | Q. | All right.  Do you recognize this location? |
| 16 | A. | Yes. |
| 17 | Q. | What do you recognize this to be? |
| 18 | A. | The warehouse. |
| 19 | Q. | And that's where you first met Mr. Philippe? |
| 11:15AM 20 | A. | Yes. |
| 21 | Q. | All right. |
| 22 | | THE DEFENDANT:  Objection. |
| 23 | | THE COURT:  Overruled. |
| 24 | Q. | How did you get into the warehouse to meet with him? |
| 25 | A. | The garage door. |

8

```
 1              THE DEFENDANT:  Objection.

 2              THE COURT:  Overruled.

 3   Q.   Where on that image is the garage you're talking about?

 4   A.   To the right.

 5   Q.   Now, when you first met with Mr. Philippe, you said you

 6   were with Ronson; is that right?

 7   A.   Yes.

 8   Q.   And who else were you with?

 9   A.   My brother.

10   Q.   Your brother.  Which brother?

11              THE DEFENDANT:  Objection.

12   A.   Albert.

13   Q.   And what was your purpose in going there?

14   A.   To buy firearms.

15              THE DEFENDANT:  Objection.

16              THE COURT:  Overruled.

17   Q.   And did you, in fact, buy firearms that first day?

18   A.   Yes.

19              THE DEFENDANT:  Objection.

20              THE COURT:  Overruled.

21   Q.   How many firearms did you purchase that first day?

22   A.   Two.

23              THE DEFENDANT:  Objection.

24              THE COURT:  Overruled.

25   Q.   What kind of firearms did you purchase?
```

11:16AM (line 10)
11:16AM (line 20)

1    A.    Two Taurus 9s.

2              THE DEFENDANT:  Objection.

3              THE COURT:  Overruled.

4              THE COURT:  Let me explain something to the jury.

5    You're hearing evidence about alleged firearm sales and

6    transactions that are not specifically charged in the

7    indictment, and I'm permitting this testimony not because that

8    specifically is charged as a crime here but for whatever weight

9    you choose to assign it in terms of determining the defendant's

11:16AM 10   intent and knowledge.

11             A crime can't be committed accidentally or

12   negligently.  The defendant has to act willingly and with

13   knowledge, and I'm permitting this only so you may consider

14   that evidence for whatever weight you choose to assign it in

15   terms of assessing his intent.

16             Go ahead, Mr. McNeil.

17             MR. McNEIL:  Thank you.

18   Q.    How much did you pay for these two firearms?

19   A.    500 each.

11:17AM 20   Q.    And did anyone else purchase firearms that day when you

21   were with Mr. Philippe?

22             THE DEFENDANT:  Objection.

23             THE COURT:  Overruled.

24   A.    Yes.

25   Q.    Who else purchased firearms?

1   A.   ████████  and my brother.

2          THE DEFENDANT:  Objection.

3          THE COURT:  Overruled.

4   Q.   How many firearms did ████████ purchase?

5   A.   I'd say about two.

6          THE DEFENDANT:  Objection.

7          THE COURT:  Overruled.

8   Q.   Do you know how much he paid?

9   A.   The same price.

11:17AM 10   Q.   And how about your brother ██?

11   A.   The same.

12   Q.   How many guns did he purchase?

13   A.   Two.

14          THE DEFENDANT:  Objection.

15          THE COURT:  Overruled.

16   Q.   How much did he pay?

17   A.   500.

18   Q.   And the types of firearms that you were buying that day,

19   were they all the same type of firearm?

11:18AM 20   A.   I believe so, to the best of my recollection.

21          THE DEFENDANT:  Objection.

22          THE COURT:  Overruled.

23   Q.   Can you tell the jury where in this warehouse these

24   transactions took place?

25   A.   In the office.

```
 1              MR. McNEIL:  Can you bring up Exhibit Number 5,
 2    please.
 3    Q.    Do you recognize this?
 4    A.    Yes.
 5    Q.    And what is that?
 6              THE DEFENDANT:  Objection.
 7              THE COURT:  Overruled.
 8    A.    It's the office.
 9    Q.    Sorry, which office?
10    A.    Rich's office.
11              THE DEFENDANT:  Objection.
12              THE COURT:  Overruled.
13    Q.    And when you did this first transaction, where was Rich
14    standing or seated?
15    A.    Behind the glass desk.
16              THE DEFENDANT:  Objection.
17              THE COURT:  Overruled.
18    Q.    All right.  After that first time -- let me ask you this.
19    Before going there that day, did you preorder those firearms?
20    A.    Can you repeat?
21    Q.    The first time.  The first time, did you order the
22    firearms in advance?
23    A.    No, just bought them.
24              THE DEFENDANT:  Objection.
25              THE COURT:  Overruled.
```

1    Q.   Did you see where Rich got those firearms from when you

2    bought them that time?

3    A.   I believe they were just out on the desk.

4         THE DEFENDANT:  Objection.

5         THE COURT:  Overruled.

6    Q.   You said a moment ago that you purchased more than a dozen

7    firearms from Mr. Philippe over time; is that right?

8         THE DEFENDANT:  Objection.

9         THE COURT:  Overruled.

11:19AM 10    A.   Yes.

11    Q.   How many times did you meet with Mr. Philippe between this

12    first time and the date of your arrest, approximately?

13    A.   I'd say around eight.

14         THE DEFENDANT:  Objection.

15         THE COURT:  Overruled.

16    Q.   And of those eight times, how many times did you buy

17    firearms?

18    A.   I believe four or five.

19         THE DEFENDANT:  Objection.

11:19AM 20         THE COURT:  Overruled.

21    Q.   And each time, approximately, how many firearms did you

22    buy?

23    A.   Between three and four.

24         THE DEFENDANT:  Objection.

25         THE COURT:  Overruled.

1    Q.    What kinds of firearms were you buying from him?

2    A.    Mainly 9s, Tauruses.

3              THE DEFENDANT:  Objection.

4              THE COURT:  Overruled.

5    Q.    Did you purchase anything aside from a 9 Taurus?

6    A.    Yeah, a Glock 9.

7              THE DEFENDANT:  Objection.

8              THE COURT:  Overruled.

9    Q.    How many times did you buy a Glock 9?

11:20AM 10    A.    Twice.

11              THE DEFENDANT:  Objection.

12              THE COURT:  Overruled.

13    Q.    How much were you paying, after this first time where you

14    paid $500, how much were you paying for the Tauruses after that

15    point?

16    A.    360.

17              THE DEFENDANT:  Objection.

18              THE COURT:  Overruled.

19    Q.    How much were you paying for the Glocks?

11:20AM 20    A.    Around 1,000.

21              THE DEFENDANT:  Objection.

22              THE COURT:  Overruled.

23    Q.    Now, when you went to buy these firearms, did you -- let

24    me ask you this.  You said you met with him approximately eight

25    times, you bought firearms four or five times.  What happened

1    on the other occasions when you met with him?

2    A.    It was basically just to put an order in.

3              THE DEFENDANT:  Objection.

4              THE COURT:  Overruled.

5    Q.    How did it work?  After that first time, how did these

6    transactions work?

7    A.    I would put an order in, come back maybe --

8              THE DEFENDANT:  Objection.

9              THE COURT:  Overruled.

11:21AM 10   A.    Days later --

11             THE DEFENDANT:  Objection.

12             THE COURT:  Overruled.

13   A.    -- and the same pattern basically.

14             THE DEFENDANT:  Objection.

15             THE COURT:  Overruled.

16   Q.    And when you put an order in, what would you do, you'd

17   walk in and talk to him directly?

18   A.    Kind of basically, yes.

19             THE DEFENDANT:  Objection.

11:21AM 20            THE COURT:  Overruled.

21   Q.    Each time you went, were you with someone?

22   A.    Yes.

23   Q.    Who were you with?

24   A.    ███████  and sometimes my brother.

25             THE DEFENDANT:  Objection.

         1              THE COURT:  Overruled.

         2    Q.   Were you present when other people placed orders for

         3    firearms with Mr. Philippe?

         4    A.   Yes.

         5              THE DEFENDANT:  Objection.

         6              THE COURT:  Overruled.

         7    Q.   How many times did you see other people place orders for

         8    firearms?

         9    A.   Well, I don't think they was placing orders, but they was

11:21AM 10    around.

        11              THE DEFENDANT:  Objection.

        12              THE COURT:  Overruled.

        13    Q.   Were there any other occasions when you bought firearms

        14    where other people bought firearms?

        15    A.   Yes.

        16    Q.   And other than that first time, how many other occasions

        17    were there when you saw other people buying firearms?

        18    A.   Maybe like once.

        19              THE DEFENDANT:  Objection.

11:22AM 20              THE COURT:  Overruled.

        21    Q.   And who was that, do you recall?

        22    A.   Well, it was like a group of people, Cape Verdean people.

        23              THE DEFENDANT:  Objection.

        24              THE COURT:  Overruled.

        25    Q.   All right.  Other than this -- you said it was a group of

```
 1    people.  I actually couldn't hear the last thing you said.

 2    A.    Yeah, a group of Cape Verdean people.

 3              THE DEFENDANT:  Objection.

 4              THE COURT:  Overruled.

 5    Q.    That was on one of the occasions you went to buy firearms?

 6    A.    Yes.

 7    Q.    Did you see either ███████ or █ buy firearms on other

 8    days?

 9    A.    Yes.

10              THE DEFENDANT:  Objection.

11              THE COURT:  Overruled.

12    Q.    How many times did you see ██████ and █ buy firearms?

13    A.    My brother, twice, ██████ maybe like three times.

14              THE DEFENDANT:  Objection.

15              THE COURT:  Overruled.

16    A.    Three different occasions.

17    Q.    Each time that your brother and ██████ bought firearms,

18    how many firearms did they buy, approximately?

19    A.    Between two and --

20              THE DEFENDANT:  Objection.

21              THE COURT:  Overruled.

22    A.    -- three.

23    Q.    And you said you would place orders sometimes.  When you

24    place an order, did you just tell him or did you have to put

25    money down or what did you have to do?
```

11:22AM (line 10)

11:23AM (line 20)

|     |                                                                   |
| --- | ----------------------------------------------------------------- |
| 1   | A.    Basically tell him what we wanted and put money down.       |
| 2   |         THE DEFENDANT:  Objection.                                |
| 3   |         THE COURT:  Overruled.                                    |
| 4   | Q.    Now, in addition to purchasing firearms, excuse me, in      |
| 5   | addition to purchasing firearms from Mr. Philippe, did you        |
| 6   | purchase any ammunition from him?                                 |
| 7   | A.    Yes.                                                        |
| 8   |         THE DEFENDANT:  Objection.                                |
| 9   |         THE COURT:  Overruled.                                    |
| 11:23AM 10 | Q.    How many times?                                      |
| 11  | A.    Maybe like one time.                                       |
| 12  |         THE DEFENDANT:  Objection.                                |
| 13  |         THE COURT:  Overruled.                                    |
| 14  | Q.    How much did you pay for the ammunition?                   |
| 15  | A.    Around a dollar a bullet.                                  |
| 16  |         THE DEFENDANT:  Objection.                                |
| 17  |         THE COURT:  Overruled.                                    |
| 18  | Q.    And did you see anyone else buy any ammunition from        |
| 19  | Mr. Philippe?                                                     |
| 11:24AM 20 | A.    Yes.                                                 |
| 21  | Q.    Who?                                                       |
| 22  | A.    My brother and ███████ .                                    |
| 23  |         THE DEFENDANT:  Objection.                                |
| 24  |         THE COURT:  Overruled.                                    |
| 25  | Q.    How often did they buy ammunition from Mr. Philippe?      |

          1    A.   Not much.

          2         THE DEFENDANT:  Objection.

          3         THE COURT:  Overruled.

          4    Q.   Now, other than firearms and ammunition were there any

          5    other things that you bought from Mr. Philippe while you were

          6    there at his warehouse?

          7    A.   Extended magazines and --

          8         THE DEFENDANT:  Objection.

          9         THE COURT:  Overruled.

11:24AM  10    A.   -- laser beams and stuff.

         11         THE DEFENDANT:  Objection.

         12         THE COURT:  Overruled.

         13    A.   Attachments for them.

         14    Q.   Just can you explain to the jury what an extended magazine

         15    is?

         16    A.   It's just a clip that holds more than what the normal clip

         17    does for a firearm.

         18         THE DEFENDANT:  Objection.

         19         THE COURT:  Overruled.

11:24AM  20    Q.   And what are the other items that you bought that you

         21    recall?

         22    A.   Laser beams.

         23         THE DEFENDANT:  Objection.

         24         THE COURT:  Overruled.

         25    Q.   And what were these laser beams for?

```
 1    A.    Like basically to be more on point --

 2              THE DEFENDANT:  Objection.

 3              THE COURT:  Overruled.

 4    A.    -- like to put the beam on the target.

 5    Q.    Now, how did you pay Mr. Philippe for these firearms and

 6    other items?

 7              THE DEFENDANT:  Objection.

 8              THE COURT:  Overruled.

 9    A.    Cash.

11:25AM 10              THE DEFENDANT:  Objection.

11              THE COURT:  Overruled.

12    Q.    And did Mr. Philippe say anything to you about where he

13    was getting the firearms?

14              THE DEFENDANT:  Objection.

15              THE COURT:  Overruled.

16    A.    Yes, he was getting them from Georgia.

17              THE DEFENDANT:  Objection.

18              THE COURT:  Overruled.

19    Q.    And did he explain to you how the firearms were getting

11:25AM 20    from Georgia to Massachusetts?

21    A.    He was driving out there.

22              THE DEFENDANT:  Objection.

23              THE COURT:  Overruled.

24    Q.    Now, once you obtained these firearms from Mr. Philippe,

25    what did you do with them?
```

1   A.   Bring them to Brockton.

2          THE DEFENDANT:  Objection.

3   Q.   You bring them to Brockton and then what did you do?

4          THE COURT:  Why do we need to get into that,

5   Mr. McNeil, why?

6          THE DEFENDANT:  Yes, your Honor, this is all

7   speculation.  We're just waisting time.

8          THE COURT:  Overruled.  I don't think what this

9   witness did with the guns after he bought them is relevant.

11:26AM 10          MR. McNEIL:  Okay.  Your Honor, if I may approach the

11   witness?

12          THE COURT:  Yes.

13   Q.   I'm going to show you what has been marked 31.1, 31.2,

14   31.3, 31.4, 31.5, 31.6 and 31.7 and 31.8 and 31.9.  Have you

15   seen those photographs?

16   A.   Yes.

17   Q.   Did you take those photographs?

18   A.   Yes.

19   Q.   Can you tell generally what those photographs are?

11:26AM 20   A.   Me holding the firearm.

21   Q.   And where did you obtain each of those firearms?

22   A.   From Rich.

23          THE DEFENDANT:  Objection.

24          THE COURT:  Overruled.

25          MR. McNEIL:  Your Honor, I'd offer these in at this

1    time.

2              THE COURT:  All right.  I'll admit them.  And, again,

3    ladies and gentlemen, all of this is offered solely on the

4    issue of defendant's knowledge and intent.

5              (Exhibit Nos. 31.1, 31.2, 31.3, 31.4, 31.5, 31.6,

6    31.7, 31.8 and 31.9 received into evidence.)

7              MR. McNEIL:  If you could bring up 31.1, please.

8    Q.   Again, do you recognize this picture?

9    A.   Yes.

11:27AM 10   Q.   Is that your hand?

11   A.   Yes.

12   Q.   Okay.  What kind of firearm is that?

13   A.   Smith & Wesson.

14   Q.   And where did you obtain that firearm?

15   A.   From Rich.

16             THE DEFENDANT:  Objection.

17             THE COURT:  Overruled.

18             THE COURT:  Mr. McNeil, is that the charged firearm,

19   is that what the government says?

11:27AM 20            MR. McNEIL:  This one is not one of the charged

21   firearms.

22             THE COURT:  Okay, go ahead.

23   Q.   31.2.  Do you recognize that?

24   A.   Yes.

25   Q.   Is that your hand?

```
 1   A.   Yes.

 2   Q.   What's in that picture?

 3   A.   Holding a Taurus 9.

 4   Q.   And where did you get that?

 5   A.   From Rich.

 6             THE DEFENDANT:  Objection.

 7             THE COURT:  Overruled.

 8   Q.   31.3.  Do you recognize that?

 9   A.   Yes.

10   Q.   Is that your hand?

11   A.   Yes.

12   Q.   What kind of firearm is that?

13   A.   What they call The Judge.

14   Q.   Where did you get that?

15             THE COURT:  I object to that.

16   A.   From Rich.

17             THE DEFENDANT:  Objection.

18             THE COURT:  Overruled.

19   Q.   31.4, please.  Do you recognize that?

20   A.   Yes.

21   Q.   Is that your hand?

22   A.   Yes.

23   Q.   And what kind of firearm is that?

24   A.   It's a Glock 9.

25   Q.   All right.  Now, there's a big sort of black blob towards
```

```
 1    the bottom of that paragraph.  What is that?

 2    A.   It's a 50 round drum.

 3    Q.   No, what is that so the jury understands it?

 4    A.   It's a 15-round magazine for the firearm.

 5    Q.   Where did you get the magazine and the gun?

 6    A.   From Rich.

 7              THE DEFENDANT:  Objection.

 8              THE COURT:  Overruled.

 9    Q.   What's on the front of the gun there?

10    A.   It's a laser beam.

11    Q.   31.5.  Do you recognize that?

12    A.   Yes.

13    Q.   Did you take that photograph?

14    A.   Yes.

15    Q.   Where did you take that?

16    A.   In the warehouse.

17              THE DEFENDANT:  Objection.

18              THE COURT:  Overruled.

19    Q.   How can you tell that you took that in the warehouse?

20    A.   I'm sorry.

21    Q.   How can you tell that you took that in the warehouse?

22    A.   Because I remember taking the picture on that little

23    couch.

24              THE DEFENDANT:  Objection.

25              THE COURT:  Overruled.
```

11:29AM (line 10)

|       |     |                                                        |
|-------|-----|--------------------------------------------------------|
| 1     | Q.  | Whose gun was that?                                     |
| 2     | A.  | It was Rich's.                                         |
| 3     |     | THE DEFENDANT:  Objection.                             |
| 4     |     | THE COURT:  Overruled.                                 |
| 5     | Q.  | And why did you take that picture of the gun?          |
| 6     | A.  | Because I was going to try to advertise it to sell it. |
| 7     |     | THE DEFENDANT:  Objection.                             |
| 8     |     | THE COURT:  Overruled.                                 |
| 9     | Q.  | Next one, 31.6.  Do you recognize that?                |
| 11:29AM 10 | A. | Yes.                                               |
| 11    | Q.  | What's that?                                           |
| 12    | A.  | It's my hand, and I'm holding a .357.                  |
| 13    | Q.  | Where did you get that?                                |
| 14    | A.  | From Rich.                                             |
| 15    | Q.  | 31.7.  Do you recognize that?                          |
| 16    | A.  | Yes.                                                   |
| 17    | Q.  | And what's that?                                       |
| 18    | A.  | It's an AR-15.                                         |
| 19    | Q.  | And whose gun was that?                                |
| 11:30AM 20 | A. | It was Rich's.                                     |
| 21    |     | THE DEFENDANT:  Objection.                             |
| 22    |     | THE COURT:  Overruled.                                 |
| 23    | Q.  | And what -- 31.8.  Do you recognize that?              |
| 24    | A.  | Yes.                                                   |
| 25    |     | THE COURT:  Hold on, let's go back to 31.7.  Unless    |

1  there's a foundation, I'm going to strike his testimony that

2  that gun was Rich's.

3          MR. McNEIL:  Sorry, your Honor, I didn't hear that.

4          THE COURT:  31.7, without any foundation, he said this

5  gun is Rich's.  I'm going to strike that unless a foundation is

6  laid.

7          MR. McNEIL:  Okay.

8  Q.   How did you come to --

9          THE DEFENDANT:  Motion to strike to all the other ones

11:31AM 10  because how do they relate to me?

11          THE COURT:  Overruled.

12  A.   Say that again, I'm sorry.

13  Q.   How did you -- first of all, is that your hand in the

14  photo?

15  A.   Yes.

16  Q.   And where did you take that picture?

17  A.   My brother's house.

18  Q.   And how did that gun come to your brother's house?

19          THE COURT:  You need a foundation for saying that.

11:31AM 20  I'm just going to strike 31.7.  I don't know why we're spending

21  this time on this.  I'm going to strike the exhibit, strike the

22  related testimony.  Let's move on.

23  Q.   31.8.

24          THE COURT:  I instruct the jury to disregard 31.7 and

25  the related testimony.  Go ahead.

26

```
 1    Q.   Do you recognize that?

 2    A.   Yes.

 3    Q.   Did you take that photograph?

 4    A.   Yes.

 5    Q.   What's the firearm in that photograph?

 6    A.   I believe it's a 40, but I forgot what brand.

 7    Q.   Where did you get that?

 8    A.   From Rich.

 9         THE DEFENDANT:  Objection.

11:32AM 10         THE COURT:  Overruled.

11    Q.   What's sticking out the bottom?

12    A.   It's a 30 round magazine.

13    Q.   And, finally, 31.9, do you recognize that?

14    A.   Yes.

15    Q.   What's that?

16    A.   I believe it's a Combat 40.

17    Q.   And is that your hand?

18    A.   Yes.

19    Q.   Where did you get that?

11:32AM 20    A.   From Rich.

21         THE DEFENDANT:  Objection.

22         THE COURT:  Overruled.

23    Q.   Now, when you met with Rich, did he call you by name?  Did

24    he call you anything?

25    A.   Not really.  He didn't really --
```

```
 1              THE DEFENDANT:  Objection.

 2              THE COURT:  Overruled, overruled.

 3    A.    Probably just █ , but --

 4              THE DEFENDANT:  Objection.

 5              THE COURT:  Overruled, overruled.

 6    Q.    Sorry, what did you go by?

 7    A.    █ .

 8    Q.    And when you went to meet with him and purchase these

 9    firearms, did he ever ask you for an identification?

11:33AM 10              THE COURT:  Overruled.

11    A.    No.

12              THE DEFENDANT:   Objection.

13    Q.    Did he ask you if you had a firearms identification card?

14    A.    No.

15    Q.    Did he ever ask you if you had a license to carry a

16    firearm in Massachusetts?

17              THE DEFENDANT:  Objection.

18              THE COURT:  Overruled.

19    A.    No.

11:33AM 20    Q.    Did he ask you whether you had a criminal record?

21    A.    No.

22    Q.    And you had, in fact, a criminal record at that time; is

23    that right?

24    A.    Yes.

25    Q.    Did Mr. Philippe ever give you a receipt for the purchase
```

```
 1   of these guns?
 2           THE DEFENDANT:  Objection.
 3           THE COURT:  Overruled.
 4   A.   No.
 5   Q.   Did he ever -- did you ever see him entering the sale in a
 6   log book?
 7   A.   No.
 8           THE DEFENDANT:  Objection.
 9           THE COURT:  Overruled.
10           THE DEFENDANT:  Judge, this is the first time I'm
11   seeing all this stuff, and I'm just realizing, it's all
12   speculation, and there's no hard evidence that proves that I
13   have any connection with this man or any of these things.
14           THE COURT:  All right, overruled.
15   Q.   You see a computer on his desk; is that right?
16   A.   Yes.
17   Q.   Did you ever see him entering any information in that
18   computer when he sold you those firearms?
19           THE DEFENDANT:  Objection.
20           THE COURT:  Overruled.
21   A.   No.
22   Q.   Did he ever ask you why you needed so many guns?
23           THE DEFENDANT:  Objection.
24           THE COURT:  Overruled.
25   A.   No.
```

1   Q.   Did he ever ask you whether you sold them or what you did

2   with them?

3   A.   No.

4           THE DEFENDANT:  Objection.

5           THE COURT:  Overruled.

6   Q.   And you testified earlier that you saw both Al and Ronson

7   buying guns from Mr. Philippe; is that right?

8   A.   Yes.

9   Q.   Did he ever ask -- in your presence, did he ever ask

11:34AM 10   Ronson for his identification?

11          THE DEFENDANT:  Objection.

12          THE COURT:  Overruled.

13  A.   No.

14  Q.   Did he ever ask ████████ for a firearm's identification?

15          THE COURT:  We don't need to go through every one of

16  those questions again for the other buyers.  See if you can

17  speed this up, Mr. McNeil.

18          MR. McNEIL:  Can I have a moment, your Honor?

19          THE COURT:  Yes.

11:35AM 20  Q.   Did you ever create or make any paperwork with regard to

21  these firearms?

22  A.   Can you say that one more time, please?

23  Q.   Did you ever create any kind of sale records or paperwork

24  when you purchased or sold these firearms?

25  A.   No.

1        MR. McNEIL:  Your Honor, I have no further questions.

2        THE COURT:  All right.  Mr. Philippe, do you wish to

3   cross-examine this witness?

4        THE DEFENDANT:  Yes.  Yes, your Honor.

5                        CROSS-EXAMINATION

6   BY MR. PHILIPPE:

7   Q.   What's your name again, sir?

8   A.   ███████████

9   Q.   Okay.  So I understand you did say you made a deal with

11:36AM 10   the government and you signed some paperwork; is that right?

11   A.   Yes.

12   Q.   Would you say that the government have caused you go into

13   contract and colluded you to sign the papers?

14   A.   Can you say that again?

15   Q.   Did the government somehow force you or give you some kind

16   of proposition for your freedom to sign those papers?

17   A.   No.

18   Q.   Would you say that you are here to bring a claim against

19   me personally?

11:37AM 20   A.   No.

21        THE COURT:  I'll sustain that.  I will not permit that

22   question, and I'll strike the answer.

23   Q.   Okay.  Would you say I've ever caused you any lost harm or

24   damage?

25        MR. McNEIL:  Objection.

1          THE COURT:  Sustained.

2     A.   No.

3          THE COURT:  I'll strike that.  I've sustained the

4     question.

5          THE DEFENDANT:  No further questions, your Honor.

6          THE COURT:  Thank you.  You may step down.  All right.

7                              - - - -

8

9               C E R T I F I C A T E

10

11          UNITED STATES DISTRICT COURT )

12          DISTRICT OF MASSACHUSETTS ) ss.

13               CITY OF BOSTON )

14          I do hereby certify that the foregoing transcript,

15     Pages 1 through 31 inclusive, was recorded by me

16     stenographically at the time and place aforesaid in Criminal

17     Action No. 19-10328-FDS, UNITED STATES of AMERICA vs.

18     RICHARD PHILIPPE and thereafter by me reduced to typewriting

19     and is a true and accurate record of the proceedings.

20          Dated this 30th of December, 2021.

21

22               s/s Valerie A. O'Hara

23          _____

24               VALERIE A. O'HARA

25               OFFICIAL COURT REPORTER